## OPINION OF THE JUSTICES TO THE SENATE AND HOUSE OF REPRESENTATIVES.

Under c. 1, § 1, art. 4 of the Constitution of the Commonwealth a tax on property must be "proportional and reasonable," while an excise on a commodity need be only "reasonable."

A general property tax, in order to be proportional, must be distributed so that the amount to be raised shall be contributed by the taxpayers according to the taxable real and personal estate of each, and a tax for a local improvement must be apportioned according to the benefit accruing to the several estates from the public expenditure.

A statute, which should undertake to establish a scheme of taxation of money on deposit or at interest and of public and all other stocks, bonds and evidences of indebtedness, by which these kinds of property should be assessed at a certain

---

* See St. 1909, c. 440, § 1; c. 490, Part I, §§ 15, 23; Part IV, § 27; St. 1913, c. 835, § 503; St. 1914, c. 198.

number of times their annual net income and taxed at a rate uniform for each city or town, while other kinds of property should be assessed for taxation at their market values, would be unconstitutional as an attempt to impose a property tax that would not be proportional.

An attempted imposition of an excise on incomes derived from intangible personal property, including interest on debts of every kind and dividends on shares of stock in corporations, and an exemption of these classes of property from other taxation, would be in substance and effect a tax on the property from which the incomes are derived and consequently would be unconstitutional because it would not be a proportional tax.

The question, whether a tax of two per cent upon the gross income derived from any profession, trade or employment by the exercise of individual industry and ability would be an excise or a property tax, here was not answered, because the order of the Senate and the House of Representatives requiring the opinion of the justices was interpreted not to call for such an answer.

The question, whether shares of the capital stock of foreign corporations and evidences of indebtedness of domestic or foreign corporations, which represent or derive their values directly from tangible property taxable at its *situs*, lawfully may be exempted from taxation, which expressly was left open in the *Opinion of the Justices,* 195 Mass. 607, here was not considered, because such consideration was not necessary.

A statute, which should exempt from taxation shares of stock in foreign corporations and shares of stock, bonds and evidences of indebtedness that derive their value from property otherwise subject to taxation, and should subject the owner of such exempted securities to an excise at a fixed rate upon the face value of the securities, both the exemption from the property tax and the levying of the excise being conditioned upon establishing the existence of certain facts to the satisfaction of the tax commissioner upon the annual registration of such securities with the tax commissioner, would be unconstitutional for the reasons set forth in the *Opinion of the Justices,* 195 Mass. 607.

The question, whether a statute drawn upon the theory of substituting for general taxation based upon the fair cash values of property a general system of taxation founded upon property values ascertained wholly with reference to income would be constitutional, was not presented to the justices and accordingly was not considered.

A statute, by which moneys due to inhabitants of this Commonwealth from non-resident persons and foreign corporations and shares of stock in and all evidences of indebtedness of foreign corporations held by inhabitants of this Commonwealth should be declared to have no *situs* in this Commonwealth for purposes of taxation, and their holders should be subjected to an excise to be levied on the incomes derived therefrom, would be unconstitutional; because the so called excise would be a tax on the income of property and therefore on the property itself and would not be proportional.

THE following joint order was passed by the House of Representatives on March 18, 1915, and by the Senate on March 19, 1915. On March 24, 1915, it was transmitted to the Justices of the Supreme Judicial Court, who on April 12, 1915, returned the answer which is subjoined.

ORDERED, That, in view of the great changes which have taken place in the physical and financial character of intangible personal property since the adoption of the present tax system; of the fact that the present system of taxing such property has ceased to be equitable or proportional as regards the owners of other kinds of property and fails to produce the public revenue which it should produce; of the inequality, inefficiency and disproportionality which arises from the attempt to levy taxes upon all kinds of property at a definite and (within each city or town) uniform percentage of its capital or market value, without regard to the physical differences or to the differences in earning power or income which exist between the various kinds of property; of the fact that no system of administration or enforcement can be devised which will make the actual result of the present system reasonably equal or proportional; and of the fact that during long periods in the history of the Commonwealth tax laws more suitable to present conditions than the present system have been enacted and maintained under a charter or constitutional limitation that taxes upon property shall be proportional, —

ORDERED, That the opinion of the Justices of the Supreme Judicial Court be required by the General Court upon the following important questions of law:

First. Can the General Court, either under the provision of the Constitution authorizing the Legislature to "impose and levy proportional and reasonable assessments, rates, and taxes, upon all the inhabitants of, and persons resident, and estates lying, within the said Commonwealth," or under any other provision of the Constitution — for the purpose of correcting the inequalities of the statutory tax system now in force, of securing a much needed revenue from certain kinds of property which now pay (as compared with other property) a smaller tax or none at all, of making the tax laws of the Commonwealth more truly equal and proportional than they now are and thus more responsive to the constitutional requirements — enact, as was done under the Province Charter in execution of a tax clause substantially identical with that in the State Constitution, that certain forms of property shall be assessed upon their market value and other forms of property upon a certain number of times their annual value, the total assessments thus reached to be taxed at a rate

uniform for each town or city; provided that the figures or multipliers used be fixed by some State authority, or by the General Court itself, with a view to securing a stricter parity of contribution, having regard to either the capital or the annual value of property and the taxes levied upon it, between the different classes of property and their owners in this Commonwealth than is possible under the present system; and provided that the intent and probable effect of the law is not to discriminate in the matter of taxation against certain forms of property or their owners in favor of the owners of other kinds of property, but that the intent and probable effect of the law is to secure a greater equality of contribution between the owners of different kinds of property, a more truly proportional system of taxation throughout the Commonwealth, a uniform rate in each town or city, and a larger public revenue than is possible under the present law?

Second. Can the General Court, under the provision of the Constitution authorizing it to impose and levy reasonable duties and excises, impose and levy a reasonable duty or excise upon incomes derived from intangible personal property, such as money on deposit or at interest, debts due the taxpayer, public stocks and securities and stocks, bonds, notes or other evidences of indebtedness of corporations, domestic and foreign; and can it also levy at a uniform rate throughout the Commonwealth a reasonable duty or excise upon incomes derived from professions, trades and employments?

Third. Can the General Court

(a) Exempt from taxation such stocks of foreign corporations and such bonds, debentures, bills and notes of domestic or foreign corporations (not already so exempt) as may be proved by the holders thereof to be secured by, to represent or to derive their values directly from, tangible property (not through the holdings of stocks or bonds of other corporations), provided that such tangible property is taxable where it is located; and provided that the tax commissioner does not find that such of said tangible property as may be situated within the Commonwealth is inadequately assessed locally for purposes of taxation; and

(b) Grant to the holders thereof the privilege (subject to the payment of a reasonable excise or duty thereon): first, of establishing the existence of such facts by filing with the tax com-

missioner evidence thereof satisfactory to him; and, having established such facts, second, of procuring the registration of such securities by the tax commissioner to indicate that they are exempt from taxation?

Fourth. Can the General Court under the Constitution provide that moneys due an inhabitant of this Commonwealth from any foreign corporation or· any person or persons not residing within the Commonwealth, and all stock, bonds, notes or other evidences of indebtedness issued by foreign corporations and held by inhabitants of this Commonwealth shall have no *situs* within the Commonwealth for purposes of taxation and shall not be taxed under the provisions of Parts I and II of chapter 490 of the Acts of the year 1909? And can the General Court then levy a reasonable duty or excise upon the income derived by inhabitants of the Commonwealth from the foregoing classes of property?

These questions are propounded with a view to legislation as recommended or suggested in the inaugural address of his Excellency the Governor, in a statement of the tax commissioner entitled "The Intent and Operation of the Tax Laws of Massachusetts," Senate document No. 440, and in certain petitions to the General Court, and with special view to certain bills now pending before the Legislature, being Senate documents Nos. 438, 439, 445 and 446, providing for a reform in our tax laws along the lines above suggested. Said message, statement and bills are now under serious consideration by the Legislature, and copies thereof are submitted herewith.

And the Justices are respectfully requested to receive any briefs or arguments upon the validity of either of the measures hereby referred which may be transmitted to them by the joint committee on taxation or by any person.

To the Honorable the Senate and the House of Representatives
    of the Commonwealth of Massachusetts:

We, the undersigned Justices of the Supreme Judicial Court, having considered the questions stated in the order of the Honorable Senate and House of Representatives transmitted to us on March 24, 1915, respectfully submit the following answers:

The order contains certain recitals of facts. In substance they are that the present system has failed to result in proportional

and reasonable taxation upon the residents of, and the estates lying within, the Commonwealth; and has effected extremely unequal and disproportionate distribution of the burdens of taxation; and that some change is imperatively demanded. These statements are accepted as the conclusions of the members of the General Court touching the administration of the system of taxation established by the statutes of the Commonwealth. It is not within our province to determine whether the evils set forth in the order may be remedied by methods open to the Legislature under the Constitution. Even the facts stated do not warrant a stretching of the Constitution beyond its fair meaning in order to accomplish an end which at present may be regarded as desirable. The Constitution must be interpreted according to the reasonable import of its words. The principles established by it cannot be varied to meet real or fancied exigencies, but must be applied without modification to new conditions as they arise. The Constitution as framed is the only guide. To change its terms is within the power of the people alone. We have not considered the abstract questions in all their aspects, but have treated them as confined to the pending bills, copies of which were transmitted. *Opinion of the Justices,* 217 Mass. 607.

The answers to all these questions depend upon the interpretation of c. 1, § 1, art. 4 of the Constitution of Massachusetts, whereby the General Court is empowered "to impose and levy proportional and reasonable assessments, rates, and taxes, upon all the inhabitants of, and persons resident, and estates lying, within the said Commonwealth; and also to impose and levy reasonable duties and excises upon any produce, goods, wares, merchandise, and commodities, whatsoever, brought into, produced, manufactured, or being within the same." These words contain the entire grant to tax. They comprehend two general powers, one to lay assessments, rates and taxes upon persons and property, the other to impose duties or excises upon commodities. These two branches of the taxing power are clearly separated. They are different in kind and are expressed in different terms. The power to tax, which includes the power to levy assessments, rates and taxes, relates to persons and property. The power in this respect is not boundless. It is restricted to the extent that it must be "proportional and reasonable." These are words of limi-

tation. Capitation and property taxes must be levied in conformity to this limitation. The significant word in the present connection is "proportional." A general property tax, in order to be proportional, must be divided so that the amount to be raised shall be shared by the taxpayers according to the taxable real and personal estate of each. A tax for a local improvement must be apportioned according to the benefit accruing to the several estates from the public expenditure. While the power to tax includes all persons and all estates within the Commonwealth, and this is most comprehensive, at the same time the restriction to the effect that all taxes must be "proportional" is equally extensive. On the other hand an excise, including thereby both duties and excises, is of a different character. It need not be based on any rule of proportion. It must only be "reasonable." It is a fixed and absolute charge upon the element selected, without reference to the amount of property or the benefit of the taxpayer.

These principles often have been declared. They were set forth clearly a century ago in *Portland Bank* v. *Apthorp*, 12 Mass. 252. They have been reiterated repeatedly and applied to the varying statutes which have been brought to the test of judicial construction in the intervening hundred years. *Commonwealth* v. *People's Five Cents Savings Bank*, 5 Allen, 428. *Oliver* v. *Washington Mills*, 11 Allen, 268. *Commonwealth* v. *Hamilton Manuf. Co.* 12 Allen, 298. *Cheshire* v. *County Commissioners*, 118 Mass. 386. *Connecticut Mutual Life Ins. Co.* v. *Commonwealth*, 133 Mass. 161. *Gleason* v. *McKay*, 134 Mass. 419. *Northampton* v. *County Commissioners*, 145 Mass. 108. *Minot* v. *Winthrop*, 162 Mass. 113. *O'Keeffe* v. *Somerville*, 190 Mass. 110. *S. S. White Dental Manuf. Co.* v. *Commonwealth*, 212 Mass. 35. The subject was discussed at length with ample quotations from previous decisions in *Opinion of the Justices*, 195 Mass. 607. It is not necessary now to traverse that general ground again. The present inquiries must be answered in the light of these principles and decisions.

The first question and Senate Document No. 446, to which it refers, relate to a scheme of taxation of money on deposit or at interest, public and all other stocks, bonds and evidences of indebtedness to be assessed at a certain number of times their

annual net income and taxed at a rate uniform for each city or town, the multipliers to be applied to such income to be determined by appropriate public authorities, all for the purpose (as expressly stated in the bill) of avoiding discrimination and inequalities in taxation and of securing a greater equality of contribution to the public charges from the owners of different kinds of property. The multiplier used in the bill is twelve for the income of all such property, unless it is less than four per cent of the market value, when twelve times four per cent is to be used; but the multiplier is subject to readjustment as occasion may require. Of course the declared purpose of the bill must be accepted as true. But an express declaration of legislative purpose to conform to the provisions of the Constitution inserted in a statute does not obviate the necessity of an inquiry into its meaning and effect to ascertain whether in truth its operative features are contrary to the Constitution.

The tax proposed confessedly is a property tax and not an excise. Manifestly all property is not assessed on the same basis. It is not all assessed on market value. Only property excluded from the bill is to be assessed on that footing. The special kinds of property referred to in the bill are not assessed on market value nor yet on income value; but at an arbitrary determination of its income value. The point to be determined is whether a property tax thus assessed is "proportional." It was said in *Oliver* v. *Washington Mills*, 11 Allen, 268, 275, that in such connection as this the "meaning of the word [proportional] is clear and definite. In relation to those expenses which are called in the Constitution 'the public charges of government,' as distinguished from local expenditures or charges incurred for the benefit of a particular section or locality, the design of the framers of the Constitution was that these, or a portion thereof, should be defrayed by means of taxation; and that in assessing the needful amount it should be laid on property, real and personal, within the Commonwealth, so that, taking 'all the estates lying within the Commonwealth' as one of the elements of proportion, each taxpayer should be obliged to bear only such part of the general burden as the property owned by him bore to the whole sum to be raised. This rule of proportion was based on the obvious and just principle that the benefit which each person derives from the govern-

ment has direct relation to the amount of property which he possesses and enjoys under its sanction and protection. It was to prevent this essential principle from being violated or disregarded, and to render it certain that taxation for general purposes of government should be made equal, that it was expressly provided in the Constitution that a valuation of estates within the Commonwealth should be taken anew decennially at least, and oftener if the Legislature should order." In other words, used in substance by a distinguished lawyer, formerly a justice of this court: A tax is proportional, within the meaning of the Constitution, only when it bears the same ratio to the whole sum raised by taxation as the taxpayer's taxable estate bears to the whole taxable estate of the Commonwealth. See *Provident Institution for Savings* v. *Boston*, 101 Mass. 575, 577. It was said, *Cheshire* v. *County Commissioners*, 118 Mass. 386, 389, that the constitutional requirement that taxes be proportional "forbids their imposition upon one class of persons or property at a different rate from that which is applied to other classes, whether that discrimination is effected directly in the assessment or indirectly through arbitrary and unequal methods of valuation." These words were employed in holding unconstitutional a statute which, for the purpose of making a uniform taxation, required reservoirs of water with the necessary dams and underlying lands to be assessed at the same value as land of like quality in the immediate neighborhood, rather than at its fair cash value. In *Opinion of the Justices*, 208 Mass. 616, 618, it was said respecting a proposal to tax personal estate at a uniform rate throughout the Commonwealth: "All kinds of property, unless exempted for good cause, must be taxed alike. It is not permissible to make an assessment at one rate upon real estate and at another rate upon personal property."

It is unnecessary to quote further from decided cases. Any scheme of taxation which aims at equality through means which are not proportional is not valid under the Constitution. The principles are well established and have been adhered to by the court from the beginning. It is obvious that the basic theory of this bill is not in harmony with them. It does not rest the assessment upon any uniform method. It enables the Legislature or a public officer to readjust the multipliers according to a

fluctuating judgment of what may be desirable even to the extent of accomplishing in practice great disproportion. The theory behind the bill would permit manifold classifications of diverse kinds of real as well as personal estate. If extended to its logical conclusions, it would be difficult to trace any remaining constitutional protection to the taxpayer.

Our attention has been called, by one of the learned briefs transmitted to us with the questions, to numerous statutes during the colonial and provincial periods of our history in which a more or less similar principle appears to have been employed. It seems unnecessary to review these in detail. It is enough to say that this practice affords little, if any, guide to that which is authorized by the Constitution. No power was conferred in express words upon the Colony government to levy taxes. In the Province Charter the only power was "to Impose and leavy proportionable and reasonable Assessments Rates and Taxes vpon the Estates and Persons of all and every the Proprietors and Inhabitants," nothing being said about excises. Yet excises were laid in many instances. *Opinion of the Justices*, 196 Mass. 603. The power to tax was greatly restricted by the Constitution. Whatever may be said as to the historical practices touching taxation in the earlier periods, they cannot be regarded as affording ground for breaking away from the plain requirement of the Constitution as to proportional property taxes and the interpretation placed on it by decisions of the court for a hundred years. It is true that in some years after the adoption of the Constitution the Legislature provided that unimproved land should be assessed at a different rate from other property. See, for example, Sts. 1781, c. 16, § 2; 1785, c. 74, § 2; 1805, c. 119, § 3; 1821, c. 107, § 3. This apparent disproportion seems to have continued until the enactment of St. 1828, c. 143, § 1. The validity of this provision does not appear ever to have been tested. Its repeal may have been due to the plain words of Chief Justice Parker, used in 1815 in *Portland Bank* v. *Apthorp*, 12 Mass. 252, 255: "Taxes must be proportional upon all the inhabitants of, and persons resident and estates lying within, the Commonwealth. The exercise of this power requires an estimate or valuation of all the property in the Commonwealth; and then an assessment upon each individual, according to his proportion of that property. To select any in-

dividual or company, or any specific article of property, and assess them by themselves, would be a violation of this provision of the Constitution." Whatever may be the explanation of this comparatively trifling disproportion, it hardly can be regarded as a modification of the Constitution itself or as warranting an interpretation of its words which would be at variance with their clear meaning and contrary to every adjudication touching their effect covering a long period of time. We are constrained to answer the first question in the negative.

The second question has two branches. The first is, whether a duty or excise may be levied upon incomes derived from intangible personal property, including interest on debts of every kind and dividends on corporate stocks; the second refers to an excise upon income derived from professions, trades and employments. The bill to which this question relates, Senate Document No. 438, provides in substance for the assessment of an "excise duty of six per cent of the amount of . . . income arising or accruing during each calendar year" from debts of every description and from stocks of all corporations, domestic or foreign. These classes of personal property are exempted from other taxation, and there are further details as to exemptions and the collection and distribution of the "excise duty." These provisions of the proposed bill constitute a selection of specific articles of property to be assessed by themselves at an unvarying rate, differing from the rate which is assessed upon other property. It is the arbitrary designation of a certain class of property without reference to any rule of proportion and without regard to the relative share of public charges, which it should bear as compared with that borne by other property and without regard to any special benefit accruing to the selected property. Manifestly it is not and does not purport to be a proportional tax. It cannot be sustained as a tax on property, which must be proportional. *Portland Bank* v. *Apthorp*, 12 Mass. 252, 255. *Cheshire* v. *County Commissioners*, 118 Mass. 386, 389. *Gleason* v. *McKay*, 134 Mass. 419, 424. Plainly it is laid as an excise. Such an imposition cannot be sustained under the clause of the Constitution relating to excises. A tax upon income from money on deposit or at interest, from bonds, notes or other debts due, and as dividends from stocks, coupled with exemption from all other taxation of

the principal from which such income flows, is in substance and effect a tax upon the property from which it is derived. A tax upon the income of property is in reality a tax upon the property itself. Income derived from property is also property. Property by income produces its kind, that is, it produces property and not something different. It does not matter what name is employed. The character of the tax cannot be changed by calling it an excise and not a property tax. In its essence a tax upon income derived from property is a tax upon the property. This was decided after most elaborate consideration, with affluent citation of authorities, in *Pollock* v. *Farmers' Loan & Trust Co.* 157 U. S. 429, 581; *S. C.* 158 U. S. 601. We do not need to review that ground or to re-state the arguments in its support. It follows that a tax upon such income is a property and not an excise tax. This point is covered also by *Opinion of the Justices*, touching the so called three-mill tax, reported in 195 Mass. 607. We adhere to the principles there stated and to the conclusions there reached. To the same effect see *Opinion of the Justices*, 77 N. H. 000. It is necessary to answer the first branch of this question in the negative.

The second branch of the question refers to that portion of the bill which imposes a tax of two per cent upon the gross income derived from any profession, trade, or employment, after making certain deductions. This, too, is sought to be levied as an excise and not as a property tax. Manifestly this part of the question and the accompanying bill refer to the money received from the exercise of individual industry and ability in profession, trade or employment. An income tax has been a part of our system of taxation from early times. It has been said that Massachusetts is the only State in the Union which firmly established a faculty or income tax as a part of its colonial and provincial revenue system, and has continued it until the present day. The Income Tax (Seligman) p. 389. The General Court usually has avoided any doubt as to its being intended to be a property tax by excepting from its operation "incomes derived from property subject to taxation." See St. 1909, c. 490, Part I, § 4, cl. 4. By description it commonly has been included with "personal estate" subject to taxation. The constitutionality of such a tax, when levied proportionally and reasonably, never has been questioned. *Wil-*

*cox* v. *County Commissioners*, 103 Mass. 544. In *Melcher* v. *Boston*, 9 Met. 73, it was treated as a tax which was assessed proportionally and hence was a property tax. It would be unprofitable now to enter upon an historical review of the provincial practice in regard to those taxes. It may be said, however, that as the Province Charter authorized only "proportionable and reasonable Assessments Rates and Taxes" upon estates, and upon persons, income taxation so far as conformable to that charter was a property tax. There is no full and accurate discussion in our decisions (apart from the cases last cited), as to the question whether such a tax upon income is an excise or a property tax. The recital of the difficulties encountered in the administration of the present system of taxation, which prefaces the present order for our opinion, does not refer to income received from profession, trade and employment, and we do not interpret the request as requiring us to answer that part of the question or to discuss those portions of the bill detached from the question and bill as a whole. Thus interpreted it is necessary to answer the second question in the negative and to advise that the proposed bill No. 438 is contrary to the Constitution.

The third question has a double aspect, as has also Senate Document No. 439, to which it relates. The first (a) refers to the subject of exemption and inquires whether the stocks of foreign corporations and evidences of indebtedness of domestic or foreign corporations, which represent or derive their values directly from tangible property, taxable where located, lawfully may be exempted from taxation. This question never has been decided in this Commonwealth. It expressly was left open in *Opinion of the Justices*, 195 Mass. 607. It is not necessary to decide it now. We assume that the proposed bill is presented as a whole, and hence we do not consider this branch of the question apart from its subdivision (b) and the sections of the proposed bill to which it relates.

The second aspect of this question and bill is, whether, as a part of the scheme of exempting stocks of foreign corporations, and stocks, bonds and evidences of indebtedness which derive their value from property otherwise subject to taxation, the owner of such securities may be subjected to an excise tax of a fixed rate upon the value of the securities, both the exemption from the ·

property tax and the laying of the excise being conditioned upon establishing the existence of certain facts to the satisfaction of the tax commissioner and upon the registration of such securities with the tax commissioner. The bill does not exact a mere registration fee, but an excise based on the face value of the securities. It does not provide for a single registration to continue until there is a change in conditions, but for an annual one, even though the conditions remain the same. The scheme thus outlined is indistinguishable in its essential features from the three-mill tax law, which the Justices, in 195 Mass. 607, advised would be unconstitutional. There is no difference in principle, so far as concerns proportionality or reasonableness, or the underlying distinctions between property and excise taxes, between an absolute exemption coupled with an express imposition of a specific excise by a single legislative enactment on the one hand, and on the other hand an exemption and excise which become operative upon the ascertainment and certification of certain facts by a public officer. This question and bill, when stripped of the machinery by which the result is to be accomplished, aim directly at the exemption of considerable classes of personal estate from the property tax coupled with the imposition of an excise at a fixed rate throughout the State without reference to proportion, in substitution for a property tax upon the same property. It was this in substance which was held impossible by *Opinion of the Justices*, 195 Mass. 607. Briefly stated, the ground is that, even if there is a right to exempt this class of property wholly from taxation, a partial exemption conditional upon the property exempted contributing an arbitrary and disproportional percentage of its value, is not authorized. The mere right to hold and own such property cannot be made the subject of an excise. For the reasons there set forth at length, the third question is answered in the negative.

It is to be observed that neither this nor the preceding question and bill proceed upon the theory of substituting for general taxation based upon fair cash value a general system of taxation founded upon property values ascertained wholly with reference to income. It is not necessary to consider the principles of law which would be involved under such circumstances.

The fourth question in substance is, whether moneys due to

inhabitants of this Commonwealth from non-resident persons and foreign corporations, and stocks and all evidences of indebtedness of such corporations held by inhabitants of this Commonwealth, may be declared to have no *situs* within the Commonwealth for purposes of taxation, and at the same time an excise be levied upon the income derived therefrom. Senate Document No. 445 is a proposed bill embodying such a scheme of taxation. We treat this also as a single proposition and do not consider whether such an exemption, apart from the proposed excise or in combination with different taxation, would be valid. As has been pointed out in answer to the second question, a tax upon the income of property is a tax upon the property itself. Hence, any such tax, however it may be designated, is in truth a property tax and not an excise tax. It is obvious, from the tenor of the question and from the phraseology of the bill, that the tax proposed is levied as an excise and not as a property tax. It does not purport to be in any sense proportional. It follows that for the reasons already stated, this question is answered in the negative.

<div style="text-align: right">

ARTHUR P. RUGG.

WILLIAM CALEB LORING.

HENRY K. BRALEY.

CHARLES A. DE COURCY.

JOHN C. CROSBY.

EDWARD P. PIERCE.

JAMES B. CARROLL.