THOMAS N. PERKINS & others, trustees, *vs.* INHABITANTS OF WESTWOOD.

Norfolk.   November 23, 1916. — March 5, 1917.

Present: RUGG, C. J., LORING, DE COURCY, CROSBY, & CARROLL, JJ.

*Constitutional Law,* Taxation.   *Tax,* On bonds registered under St. 1914, c. 761, Constitutionality.   *Words,* "Fee."

An act of the Legislature will not be declared void unless it is impossible by any reasonable construction to interpret its provisions in harmony with the Constitution.

The justices of this court, when called upon, sitting as a court, to deal with questions on which they have expressed opinions upon the requirement of a branch of the Legislature or of the Governor and Council under c. 3, art. 2 of the Constitution, regard it as their "duty most sedulously to guard against any influence which might flow from . . . previous consideration" of the same questions in their advisory capacity.   Citing *Green* v. *Commonwealth,* 12 Allen, 155, 164.

St. 1914, c. 761, which was passed by the Legislature and approved by the Governor before the adoption of the forty-fourth Amendment to the Constitution, provided that "A bond secured by mortgage on tangible property situated within or without the Commonwealth which is subject to taxation wherever situated and which is there actually taxed shall be exempt from taxation within the Commonwealth, if the fact of the taxation of such property is determined by the tax commissioner," and that, if the holder of any such bond pays "a fee at the rate of thirty cents for each hundred dollars of the par value of the bond," the tax commissioner "shall register the bond as exempt from taxation for one year from the date of such registration . . . and such bond shall not be taxed during the said year," and that "One half of the fees for registration of bonds as herein provided shall be distributed, credited and paid to the several cities and towns in which

. . . it appears that such holders of bonds resided." *Held,* that the statute is void as an attempt to provide for a taxation of bonds of the kind described which would be unequal and disproportional and accordingly in violation of c. 1, § 1, art. 4 of the Constitution.

PETITION filed in the Superior Court on April 3, 1916, under St. 1909, c. 490, Part I, § 77, by the trustees under the will of George H. Morrill, late of Norwood, appealing from the decision of the assessors of the town of Westwood refusing to abate a tax assessed to the petitioners on certain bonds registered by the tax commissioner on payment of the proper fee by the petitioners under the provisions of St. 1914, c. 761.

The respondent demurred to the petition, assigning the following reasons:

"1. That it is irrelevant and immaterial that the petitioners filed with the tax commissioner a list of bonds owned by them as trustees and registerable under the provisions of St. 1914, c. 761, of this Commonwealth and that the bonds were registered and a fee paid as alleged in the petition, as such registration does not create any exemption from taxation and hence does not give any cause for an abatement of a tax otherwise legally assessed.

"2. That St. 1914, c. 761, of this Commonwealth so far as the same affects the petition is unconstitutional, illegal and void.

"3. That the petitioners' right of abatement as alleged is based upon St. 1914, c. 761, of this Commonwealth and hence the petition does not state any valid cause for an abatement of the tax."

The case came on to be heard upon the respondent's demurrer before *Raymond,* J., who made an order sustaining the demurrer, and at the request of the parties, being of the opinion that the question raised by the demurrer ought to be determined by this court, reported the case for such determination.

St. 1914, c. 761, which was approved on July 7, 1914, is entitled "An Act to provide for payment of a fee upon presentation of certain bonds for registration," and is as follows:

"Section 1. A bond secured by mortgage on tangible property situated within or without the Commonwealth which is subject to taxation wherever situated and which is there actually taxed shall be exempt from taxation within the Commonwealth, if the fact of the taxation of such property is determined by the tax commissioner and the bond is registered as hereinafter provided.

"Section 2. The holder of any such bond may present the same to the tax commissioner with a statement in such form as the tax commissioner shall require, describing the mortgage securing the same and the property covered by the mortgage, together with a fee at the rate of thirty cents for each hundred dollars of the par value of the bond. If the tax commissioner finds that the said bond is secured by mortgage upon property which is subject to taxation and which has actually been taxed during the year prior to such statement, he shall register the bond as exempt from taxation for one year from the date of such registration and shall affix to the bond a certificate to that effect, and such bond shall not be taxed during the said year. Any such bond shall be exempt from taxation in any succeeding year upon registration on the same terms and conditions as above specified.

"Section 3. One half of the fees for registration of bonds as herein provided shall be distributed, credited and paid to the several cities and towns in which, from the said statements or other evidence, it appears that such holders of bonds resided on the dates of said statements. If such bonds are held by co-partners, guardians, executors, administrators or trustees, the proportion of fees corresponding to the amount of bonds so held shall be credited and paid to the cities and towns where the bonds would have been taxed under the provisions of clauses Fourth, Fifth, Sixth and Seventh of section twenty-three, and of section twenty-seven, of Part I of chapter four hundred and ninety of the acts of the year nineteen hundred and nine and acts in amendment thereof. Nothing in this act shall be construed as affecting the provisions of sections sixteen, seventeen and eighteen of Part I of said chapter four hundred and ninety, and acts in amendment thereof, relative to the taxation of mortgages on property within the Commonwealth."

Article 44 of the Amendments to the Constitution was adopted on November 2, 1915, and is as follows:

"Full power and authority are hereby given and granted to the General Court to impose and levy a tax on income in the manner hereinafter provided. Such tax may be at different rates upon income derived from different classes of property, but shall be levied at a uniform rate throughout the Commonwealth upon incomes derived from the same class of property. The General Court may tax income not derived from property at a lower rate

than income derived from property, and may grant reasonable exemptions and abatements. Any class of property the income from which is taxed under the provisions of this article may be exempted from the imposition and levying of proportional and reasonable assessments, rates and taxes as at present authorized by the Constitution. This article shall not be construed to limit the power of the General Court to impose and levy reasonable duties and excises."

The portion of c. 1, § 1, art. 4 of the Constitution which was changed by the forty-fourth amendment, printed above, but which was in force when St. 1914, c. 761, was approved by the Governor, is quoted in the opinion.

*C. H. Walker,* for the petitioners.

*W. G. Rowe,* for the respondent.

RUGG, C. J. The constitutionality of St. 1914, c. 761, is attacked in this case.

All rational presumptions are made in favor of the validity of every act of the legislative department of government, and the court will not refuse to enforce it unless its conflict with the Constitution is established beyond reasonable doubt. It will not be declared void unless it is impossible by any reasonable construction to interpret its provisions in harmony with the Constitution. These were early declared by this court to be fundamental principles of constitutional law, and they have been followed consistently for more than a century. *Portland Bank* v. *Apthorp,* 12 Mass. 252, 253. *Wellington, petitioner,* 16 Pick. 87, 95. *Opinion of the Justices,* 8 Gray, 20; 211 Mass. 608, 614. *Commonwealth* v. *People's Five Cents Savings Bank,* 5 Allen, 428, 431, 432. *Commonwealth* v. *Hamilton Manuf. Co.* 12 Allen, 298, 301. *Northampton* v. *County Commissioners,* 145 Mass. 108, 109. *Bogni* v. *Perotti,* 224 Mass. 152, 159.

Matters somewhat like and kindred to the question here presented for decision were among subjects called to the attention of the justices and touching which opinions were given in 195 Mass. 607, 208 Mass. 614, and 220 Mass. 613. These opinions, as has been decided repeatedly, are purely advisory, are given without the benefit of argument, and are formed and expressed under such circumstances that they cannot be considered as binding authorities and are open to reconsideration and revision. They, however,

presuppose "that the subject to which" they relate has "been judicially examined and considered." The justices, when called upon, sitting as a court, to deal with such questions again, regard it as their "duty most sedulously to guard against any influence which might flow from . . . previous consideration" of the same questions in their advisory capacity. *Green* v. *Commonwealth*, 12 Allen, 155, 164. *Young* v. *Duncan*, 218 Mass. 346, 351. *Woods* v. *Woburn*, 220 Mass. 416, 418. *Bergeron, petitioner*, 220 Mass. 472, 475. *Opinions of the Justices*, 148 Mass. 623, 625; 214 Mass. 602, 603.

This case must be decided according to the guidance of these thoroughly established and well recognized principles.

The salient provisions of the act here assailed are that it is enacted by § 1, that "A bond secured by mortgage on tangible property within or without the Commonwealth which is subject to taxation wherever situated, and which is there actually taxed, shall be exempt from taxation within the Commonwealth, if the fact of the taxation of such property is determined by the tax commissioner and the bond is registered as hereinafter provided." Provision is made by § 2 for an optional method of registration of such bonds with the tax commissioner after determination by him that they are secured by mortgage upon property which actually has been taxed during the preceding year, upon payment of "a fee at the rate of thirty cents for each hundred dollars of the par value of the bond," and thereupon such bonds shall be exempt from taxation for one year from the date of registration. The effect of § 3 is that one half the fees received in this way shall be retained by the commissioner and the other half distributed among the cities and towns in which the owners of the bonds reside, and that St. 1909, c. 490, Part I, §§ 16, 17 and 18, relative to taxation of mortgages upon real estate in this Commonwealth, shall not be affected by the act. By St. 1915, c. 135, in effect after the assessment of the tax here complained of, the entire amount of fees is to be retained by the commissioner.

The controlling provisions of the Constitution are found in c. 1, § 1, art. 4, in these words: "full power and authority are hereby given and granted to the said General Court . . . to impose and levy proportional and reasonable assessments, rates, and taxes, upon all the inhabitants of, and persons resident, and

estates lying, within the said Commonwealth: and also to impose and levy reasonable duties and excises upon any produce, goods, wares, merchandise, and commodities, whatsoever, brought into, produced, manufactured, or being within the same." Article 44 of the Amendments to the Constitution, having been approved and ratified by the people subsequent to the assessment of the tax here sought to be recovered, has no pertinency to this issue.

An analysis of the statute here assailed shows that it does not make an absolute exemption of any property from taxation. It merely exempts from taxation, upon the same basis with other property of residents within the State, such bonds, and only such bonds, as may be registered in accordance with its requirements. It does not permit the registration of all bonds, but only of those secured by mortgage on tangible property. All other bonds, secured and unsecured, are excluded from its operation. Other bonds may be secured quite as adequately by the mortgage or pledge of property, properly describable as intangible and in that form subject to taxation and actually taxed, and yet such bonds are not within the scope of the act. Still other bonds may be fully as secure by reason of the tangible assets of the maker subject to taxation and actually taxed, and yet such bonds are not within the purview of the act.

The statute is not compulsory in its terms. It is purely optional with the owners of the bonds whether they comply with its provisions. Its manifest purpose is to offer to the owners of the restricted class of bonds therein described an election either to register their bonds or to decline to register them. An almost inevitable consequence of this elective feature is that legal taxation upon all the bonds of this kind within the Commonwealth would be unequal and disproportionate. Those owners who for any reason declined to register their bonds would be liable to taxation therefor on their fair cash valuation at the local rate prevailing in the city or town of their residence, while those owners who preferred to register their bonds would pay to the Commonwealth thirty cents for each $100 of par value. The rate for such registering owners would be the same throughout the State regardless of the rate established for the municipality where each might reside. The taxation would not be uniform as to both classes of owners.

The Legislature has a considerable power to exempt certain

forms of property from one kind of taxation in order to avoid double taxation when the same property in the same or in another form has made adequate contribution to the support of government. This principle is well illustrated by the system of taxation of domestic corporations established by the General Court. See *Worcester* v. *Board of Appeal in Tax Matters*, 184 Mass. 460. Another example may be found in St. 1909, c. 490, Part I, §§ 4, 16, 17 and 18 as to the exemption from taxation of the debt secured by mortgage upon real estate within the Commonwealth which, according to the title of St. 1881, c. 304, the first statute to this end, was enacted for the purpose of "relieving property from double taxation in certain cases." The instant statute does not purport to afford relief from double taxation. That would be done as an act of justice. It would not be coupled as a condition with the levy of another tax. An act of justice is not a matter of barter. But the instant statute offers the exemption upon a stipulation first to be agreed to by the taxpayer, that another kind of revenue shall be contributed by the payment of what is called a "fee." In the practical working of the statute it well might be that of two residents in a municipality where the tax rate was $20 per $1,000, each owning a single $1,000 bond, one would be liable for a tax of $20 and the other for one of $3. The exemption is not granted by the sovereign power as an act of justice to the citizen, but is accorded only upon condition of a certain payment of another amount to a different public official and upon a different basis of valuation.

Even though it be assumed that an entire exemption might be made of the bonds described in the statute, in order to relieve against double taxation, it does not follow that a conditional exemption, operative only upon the payment of an arbitrary fixed percentage which is not proportional, would be permissible.

It is hardly possible to treat the thirty cents per $100 of par value in this connection as a mere fee. It is in essence a tax whose aggregate returns would be large, according to printed reports and public documents, if any considerable proportion of the owners of such securities should elect to pay that form of contribution to the support of government. It is common knowledge that the so-called "three mill" tax has been advocated earnestly as a means of raising revenue. It would be closing our eyes to matters of general information to assume that the thirty cents per $100 of par

value fixed by the present statute was not intended as a revenue measure, but merely to reimburse the Commonwealth for the actual cost of conducting the registration. That theory is wholly contrary to the provision in the statute as first enacted for a division of the fees between the Commonwealth and the municipalities. Clearly the latter could incur no expense in the registration of the bonds. It is contrary to what is generally known as the theoretical basis for this form of taxation.

It perhaps may be inferred that the difficulty of collection of proportional taxation on bonds of this nature led to the enactment of the statute in the hope that there would be a general disclosure of this kind of property. But experimental schemes of taxation which are violative of the Constitution are not permissible even though based upon a good hope. They must conform to the requirements of the fundamental law. Any scheme of taxation which undertakes to reach equality by means which are not proportional is not valid under the Constitution.

It is manifest from the terms of the statute that it provides for unequal and disproportional taxation for different bonds of the limited kind to which it refers. Some such bonds would be liable to the usual property tax at the local rate, while others would pay a fixed tax of a substantial amount not based upon fair cash valuation, but upon the par value. It was said by Chief Justice Bigelow in *Oliver* v. *Washington Mills*, 11 Allen, 268, 275, that property taxes "should be laid on property, real and personal, within the Commonwealth, so that, taking 'all the estates lying within the Commonwealth' as one of the elements of proportion, each taxpayer should be obliged to bear only such part of the general burden as the property owned by him bore to the whole sum to be raised. This rule of proportion was based on the obvious and just principle that the benefit which each person derives from the government has direct relation to the amount of property which he possesses and enjoys under its sanction and protection. It was to prevent this essential principle from being violated or disregarded, and to render it certain that taxation for general purposes of government should be made equal, that it was expressly provided in the Constitution that a valuation of estates within the Commonwealth should be taken anew decennially at least, and oftener if the Legislature should order."

A tax is proportional within the meaning of the Constitution only when it bears the same ratio to the whole sum raised by taxation as the taxpayer's taxable estate bears to the whole taxable property in the Commonwealth. When of two persons living side by side and owning the same kind of bonds, one is liable for a tax at one rate and another at a very different rate, it is impossible to hold that they are liable to contribute proportionally by the method of taxation imposed.

It is not necessary to determine whether any one of these factors alone would be enough to render void the statute. The conclusion is irresistible that, taking them all into account, the method of taxation embodied in the instant statute is violative of the mandate of the Constitution that all property taxes must be proportional. We are constrained to say that the reasoning set forth in the *Opinion of the Justices,* respecting the proposed three mill tax, in 195 Mass. 607, and respecting the questions answered in their opinion in 220 Mass. 613, 623–627, still seems sound. That reasoning was fortified in each of these *Opinions of the Justices* by copious extracts from numerous decisions of this court, which need not here be repeated. *Portland Bank* v. *Apthorp,* 12 Mass. 252. *Cheshire* v. *County Commissioners,* 118 Mass. 386. *Gleason* v. *McKay,* 134 Mass. 419. *Connecticut Mutual Life Ins. Co.* v. *Commonwealth,* 133 Mass. 161. *Northampton* v. *County Commissioners,* 145 Mass. 108.

The plaintiffs rely upon decisions from the courts of many States, whose constitutional provisions respecting taxation are so dissimilar to those of our Constitution that it is not worth while to review them. The conclusion which we have reached is in harmony with the views expressed by courts in other States whose constitutions limit somewhat strictly the methods of taxation. See cases collected in the *Opinion of the Justices,* 195 Mass. 607, 613, 614.

The order sustaining the demurrer was right and, in acordance with St. 1909, c. 490, Part I, § 80, the entry may be

*Judgment for the respondent.*