# SUPPLEMENT.

## OPINION OF THE JUSTICES TO THE SENATE.

It is within the competency of the General Court to levy an excise on retail sales of such produce, goods, wares, and merchandise as are tangible personal property, such excise to be levied not upon personal property which is static, but upon a change in its location or a movement in trade wrought by a transfer of title.

In giving the above opinion in response to questions submitted by the Senate respecting certain bills pending before it, the Justices stated that they assumed that sales of gasoline were excluded from the scope of the questions and that the questions were based upon the implication that sales in interstate or foreign commerce, not within the taxing power of the Commonwealth under the Federal Constitution, were not contemplated in any proposed legislation.

It is constitutionally competent for the General Court to enact a law requiring that dealers in tobacco and tobacco products be registered and imposing and levying an excise upon the privilege of registration measured by a percentage of sales.

It is constitutionally competent for the General Court to enact a law requiring that dispensers of or dealers in beverages be registered, and imposing and levying an excise upon the privilege of registration.

On April 5, 1933, the Senate adopted the following order:

WHEREAS, There are pending before the General Court three petitions with accompanying bills, printed as Senate document numbered two hundred and twenty and House documents numbered seven hundred and ninety-five and ten hundred and fifty-five, whereof copies are hereto annexed, providing for the taxation of sales of tangible personal property or commodities; and

WHEREAS, There are also pending before the General Court a bill relating to the sale of tobacco and tobacco products and imposing and levying an excise on dealers therein, and another relating to the sale of certain beverages and levying and imposing an excise on dealers therein,

such bills being printed in House document numbered four hundred and ten, whereof copies are hereto annexed; and

WHEREAS, Doubt exists as to the constitutionality of said bills, if enacted into law; therefore be it

ORDERED, That the opinions of the Honorable the Justices of the Supreme Judicial Court be required by the Senate on the following important questions of law: —

1. Is it constitutionally competent for the General Court, under that clause of Article IV of section one of chapter one of the Constitution which empowers it to impose and levy reasonable duties and excises upon any produce, goods, wares, merchandise, and commodities, whatsoever, brought into, produced, manufactured, or being within the Commonwealth, or under any other provision of the Constitution, to enact a law imposing and levying a duty or excise on sales of tangible personal property?

2. Is it constitutionally competent for the General Court, under said clause or other provision, to enact a law imposing and levying a duty or excise upon produce, goods, wares or merchandise being within the Commonwealth, such duty or excise to be exacted at the time of sale of such produce, goods, wares or merchandise?

3. Is it constitutionally competent for the General Court, under said clause or other provision, to enact a law imposing and levying a duty or excise upon produce, goods, wares or merchandise being within the Commonwealth, such duty or excise to be exacted at the time of consumption or sale for consumption of such produce, goods, wares or merchandise?

4. Is it constitutionally competent for the General Court to enact a law requiring that dealers in tobacco and tobacco products be registered and imposing and levying a duty or excise upon the privilege of registration?

5. Is it constitutionally competent for the General Court to enact a law requiring that dispensers of or dealers in beverages be registered, and imposing and levying a duty or excise upon the privilege of registration?

The order was transmitted to the Justices on April 7, 1933, and on April 17, 1933, they sent the following answers:

To The Honorable the Senate of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions set forth in an order adopted on April 5, 1933, and transmitted to them on April 7, 1933, copy whereof is hereto annexed.

The main inquiry raised by the order in its questions numbered 1, 2 and 3, as applied to the accompanying bills, is whether it is within the competency of the General Court to levy a duty or excise on sales of produce, goods, wares, and merchandise. Each of these bills, by title or by terms, concerns sales at retail.

The powers of taxation in c. 1, § 1, art. 4, of the Constitution are in these words: "full power and authority are hereby given and granted" to the General Court "to impose and levy proportional and reasonable assessments, rates, and taxes, upon all the inhabitants of, and persons resident, and estates lying, within" the Commonwealth and "to impose and levy, reasonable duties and excises, upon any produce, goods, wares, merchandise, and commodities, whatsoever, brought into, produced, manufactured, or being within the" Commonwealth. The questions relate solely to "duties and excises" and therefore only that part of the grant of power to tax need be considered. It is not necessary to examine art. 44 of the Amendments to the Constitution, relative to taxation of incomes, because none of the questions touch that subject, although House bill No. 1055 appears to have some connection with it. The grant of "full power and authority" is comprehensive. It does not easily lend itself to implied exceptions, although it must be limited in construction so as to be in harmony with other equally mandatory provisions of the Constitution. The competency of the General Court to exercise taxation is therefore of broad import. It is thus empowered to impose and levy "reasonable duties and excises." When the word "duties" was adopted as a part of the Constitu-

tion, Massachusetts was an independent State with only the loose connection with the other original States afforded by the Articles of Confederation,* and it remained such independent State until it ratified the Constitution of the United States and that instrument became established, in accordance with its art. 7, in 1788. Construed in the light of those facts, "duties" included at least the power to collect revenue from goods imported into and exported from Massachusetts, a power surrendered to the United States by art. 1, §§ 8 and 10 of the Federal Constitution. It is not necessary to consider whether it may have a wider meaning because we are of opinion that the proposed tax falls within the description of "excises." The term "excise" was said in *Portland Bank* v. *Apthorp*, 12 Mass. 252, 256, to be "of very general signification, meaning tribute, custom, tax, tollage, or assessment"; in *Oliver* v. *Washington Mills*, 11 Allen, 268, 274, to be "a fixed, absolute and direct charge laid on merchandise, products or commodities, without any regard to the amount of property belonging to those on whom it may fall, or to any supposed relation between money expended for a public object and a special benefit occasioned to those by whom the charge is to be paid"; and in *Minot* v. *Winthrop*, 162 Mass. 113, 119, it was stated that "The excises to which the inhabitants of the Province of Massachusetts Bay were accustomed were taxes in the nature of license fees for carrying on certain kinds of business, taxes on the sale of goods, wares, and merchandise, such as intoxicating liquors, tea, coffee, and chocolate, china ware, etc., and stamp taxes on legal papers." In *Pacific Ins. Co.* v. *Soule*, 7 Wall. 433, at page 445, occurs this language: "*Excise* is defined to be an inland imposition, sometimes upon the consumption of the commodity, and sometimes upon the retail sale; sometimes upon the manufacturer, and sometimes upon the vendor. [Bateman's

---

* The Continental Congress, which assembled first in 1774, exercised authority to declare independence and to wage war with incidental sovereign powers. It prepared the Articles of Confederation. These were ratified by all the States except Delaware and Maryland in 1778, by Delaware in 1779 and by Maryland in 1781. Story on the Constitution (5th ed.) §§ 200, 213–216, 225. *Ware* v. *Hylton*, 3 Dall. 199, 231, 232.

Excise Law, 96; 1 Story's Constitution, § 953; 1 Blackstone's Commentary, 318; 1 Tucker's Blackstone, Appendix, 341.]" *Patton* v. *Brady*, 184 U. S. 608, 617–618. *Opinion of the Justices*, 220 Mass. 613, 618–619. Excises have also been defined as "taxes laid upon the manufacture, sale or consumption of commodities within the country, upon licenses to pursue certain occupations, and upon corporate privileges." Cooley on Taxation (4th ed.) § 42. Without attempting to lay down a precise definition of "excises," it is apparent from what has been said that the proposed tax falls within the kind of exaction of public revenue included within that word in the Constitution.

The words descriptive of the subjects upon which reasonable "excises" may be imposed and levied are "any produce, goods, wares, merchandise, and commodities, whatsoever, brought into, produced, manufactured, or being within" the Commonwealth. The word "commodities" in this connection may have a broader significance than the other words used in conjunction with it, although in common speech it frequently is used in a sense nearly if not quite identical with them. The interpretation of that word has been discussed several times and has been found to involve difficulties. *Portland Bank* v. *Apthorp*, 12 Mass. 252. *Gleason* v. *McKay*, 134 Mass. 419, 425. *O'Keeffe* v. *Somerville*, 190 Mass. 110, 112–113. *Opinion of the Justices*, 195 Mass. 607, 614; 196 Mass. 603; 247 Mass. 589, 593; 266 Mass. 590. The scope of that word need not here be considered. It is manifest from the tenor of the questions in the order, read in the light of the accompanying bills, that the inquiry is limited strictly to sales of tangible personal property, and does not include sales of other property which would fall within the broad definition of "commodities." It is assumed, also, that sales of gasoline are excluded from the scope of the questions because no reference is made in any of the bills to the provisions of G. L. (Ter. Ed.) c. 64A, levying a tax on sales of that article based on number of gallons sold, although it may be open to doubt whether all the accompanying bills make this omission clear. The words "produce, goods, wares, merchandise" are inclusive enough in their meaning accord-

ing to the approved usage of the language to comprise all articles of tangible personal property usually sold at retail.

The questions and the accompanying bills make clear that the proposed excise is to be levied not upon personal property which is static, but upon a change in its location or a movement in trade wrought by a transfer of title. It is not levied upon the mere ownership, or the right to hold and possess property, or the exercise of what frequently are termed natural rights. *Opinion of the Justices*, 195 Mass. 607, 614; 196 Mass. 603, 622, 619; 208 Mass. 616, 618–619; 247 Mass. 589. An excise upon sales of tangible personal property based upon a percentage of the sale price bears some resemblance to a property tax; but we think that its dominant feature in the present connection is the change of title and possession necessarily involved in the sale, and not the value, of the property. In this respect it is analogous to the excise on legacies and successions, which is based upon the value of the property, and to the excise on the franchises of domestic corporations under earlier statutes. The context in which the word "excises" occurs in c. 1, § 1, art. 4, of the Constitution renders that kind of a tax appropriately operative upon a change in the location and title of tangible personal property, such as accompanies a sale. Although the quoted words of art. 4 indicate that an excise upon tangible personal property brought across the frontier or State line in consequence of or preliminary to sales was contemplated when the Constitution was adopted in 1780, such sales are expressly excluded from the operation of two of the proposed bills accompanying the order. It is assumed that the questions are based upon the implication that sales in interstate or foreign commerce, not within the taxing power of the Commonwealth under the Federal Constitution, are not contemplated in any proposed legislation. *Brown* v. *Maryland*, 12 Wheat. 419. *Fairbank* v. *United States*, 181 U. S. 283, 294–300. The quoted words from art. 4 immediately follow a grant of power "to impose and levy proportional and reasonable assessments, rates, and taxes" upon inhabitants, residents and property. They are designed to be a grant in addition to that previously conferred. They relate to the great sovereign

function of taxation upon which government must depend for its support. They are to be interpreted in accordance with the common understanding of voters at the time of their adoption. Thus construed, the words extend to the exercise of the incident of ownership of the designated personal property manifested by the transfer of title and delivery of possession inevitably associated with a sale.

This power to levy an excise need not be confined to a fixed exaction on every transfer, but may be based upon a reasonable percentage of the sale price. It does not thereby become a property tax, provided in size and nature it conforms to the general conception of an excise. *Perkins* v. *Westwood*, 226 Mass. 268. *Opinion of the Justices*, 195 Mass. 607; 220 Mass. 613. We think that it makes no difference whether the burden of the excise rests finally upon the buyer or upon the seller. *Hart Refineries* v. *Harmon*, 278 U. S. 499. *Gregg Dyeing Co.* v. *Query*, 286 U. S. 472.

As matter of construction of language and interpretation of words, we are of opinion that the power to impose an excise upon sales of tangible personal property is conferred upon the General Court. This conclusion finds support by comparison with similar words in the Federal Constitution and decisions touching their meaning.

The words of c. 1, § 1, art. 4, of the Constitution of the Commonwealth, already quoted, are seemingly as broad in respect to excises as those in art. 1, § 8, of the Constitution of the United States, whereby Congress is given power "to lay and collect . . . duties, imposts and excises . . . uniform throughout the United States." That power has been held to include an excise upon the sale of property; *Nicol* v. *Ames*, 173 U. S. 509; *Thomas* v. *United States*, 192 U. S. 363, 370; *American Manuf. Co.* v. *St. Louis*, 250 U. S. 459, 463; the gift of property, *Bromley* v. *McCaughn*, 280 U. S. 124, 136–137; and the manufacture and sale of specified property, *McCray* v. *United States*, 195 U. S. 27. In *Thomas* v. *United States*, 192 U. S. 363, at page 370, it was said of those words of the Federal Constitution, "they were used comprehensively to cover customs and excise duties imposed on importation, consumption, manufacture and sale

of certain commodities, privileges, particular business transactions, vocations, occupations and the like. Taxes of this sort have been repeatedly sustained . . . . As in *Hylton* v. *United States*, 3 Dallas, 171, on the use of carriages; in *Nicol* v. *Ames*, 173 U. S. 509, on sales at exchanges or boards of trade; in *Knowlton* v. *Moore*, 178 U. S. 41, on the transmission of property from the dead to the living; in *Treat* v. *White*, 181 U. S. 264, on agreements to sell shares of stock denominated 'calls' by New York stock brokers; in *Patton* v. *Brady*, 184 U. S. 608, on tobacco manufactured for consumption." *Barclay & Co. Inc.* v. *Edwards*, 267 U. S. 442, 450.

Since none of the proposed bills accompanying the order levy an excise on the consumption, or to be exacted at the time of consumption, of produce, goods, wares, or merchandise, question 3 is construed as not requiring consideration or answer concerning that factor. *Opinion of the Justices*, 148 Mass. 623; 261 Mass. 556, 612. Thus construed, questions 1, 2 and 3 of the order are answered in the affirmative.

The fourth question relates to legislative power to regulate sales of tobacco to the extent of requiring registration of dealers and imposing an excise in the form of a substantial fee upon the privilege of registration as an essential prerequisite to making sales. Other words of the Constitution bearing upon this inquiry are that "full power and authority" are granted to the General Court "from time to time, to make, ordain, and establish, all manner of wholesome and reasonable orders, laws, statutes, and ordinances, directions and instructions" not repugnant to its other provisions. C. 1, § 1, art. 4. This is language of broad import. It includes the exercise of the police power. The policy of courts has been not to limit that power by attempts to define it. Necessary and lawful business of a nature liable, in the absence of regulation and supervision, to harm the public health, the public safety, or the public morals, may be required to be licensed. It is common knowledge that the use of tobacco by youth is regarded as deleterious. Sales or gifts of tobacco in its various forms to persons under certain ages are prohibited under penalty by G. L.

(Ter. Ed.) c. 270, § 6. Legislation of this nature has been adopted in several of the States. So far as we are aware, it has always been upheld against assaults upon its constitutionality. In *Packer Corp.* v. *Utah*, 285 U. S. 105, 108, it was said in substance and effect that it could not be successfully denied that the State may, in the exercise of the police power, regulate the business of selling tobacco products. The ground upon which such statutes have been upheld is that tobacco is an article of such characteristics that it is within the province of the Legislature to say under what conditions it may be sold or to prohibit its sale entirely in certain forms for the protection of public health and public morals. *Gundling* v. *Chicago*, 177 U. S. 183, 188. *Austin* v. *Tennessee*, 179 U. S. 343, 348.

The selection of dealers in tobacco from among other dealers as subject to license is a permissible classification and is not arbitrary or capricious.

We are of opinion that the regulations suggested by question 4 come within the lawful exercise of the police power. *Watertown* v. *Mayo*, 109 Mass. 315. *Commonwealth* v. *Strauss*, 191 Mass. 545. *Lawrence* v. *Board of Registration in Medicine*, 239 Mass. 424. *Commonwealth* v. *National City Co. of Boston*, 280 Mass. 439.

The reasons already stated in answering questions 1, 2 and 3 show that an excise in way of license fee lawfully may be laid upon vendors of tobacco measured by a percentage on sales.

A requirement that those who dispense or deal in beverages shall be registered and pay a license fee stands in its constitutional aspects upon the same footing as a similar requirement as to tobacco. Beverage in its common meaning signifies a liquid designed for drinking by human beings. Supervision and regulation of persons by whom, and conditions under which, beverages are sold and dispensed may be thought to have close connection with the public health. Cleanliness and purity of the liquids and of the places where they are kept and sold may be regarded as necessary to the innocuous use of beverages.

Questions 4 and 5 are answered in the affirmative.

These answers have been confined to the questions and do not extend to the details of proposed bills. *Opinion of the Justices*, 239 Mass. 606, 612. The suggestion is ventured, however, that in two drafts of bills printed in House Document No. 410 there is provision to the effect that the proposed excise is in lieu of local property tax. Whether such provision would be valid may be open to grave doubt. *Opinion of the Justices*, 195 Mass. 607; 208 Mass. 616; 220 Mass. 613. *Perkins* v. *Westwood*, 226 Mass. 268.

> ARTHUR P. RUGG.
> JOHN C. CROSBY.
> EDWARD P. PIERCE.
> WILLIAM C. WAIT.
> FRED T. FIELD.
> CHARLES H. DONAHUE.
> HENRY T. LUMMUS.

## COMMUNICATION OF THE JUSTICES TO THE TREASURER AND RECEIVER GENERAL.

By reason of its bearing upon a constitutional question, it has seemed best to publish the following communication to the Treasurer and Receiver General by the Justices of the Supreme Judicial Court.

> COMMONWEALTH OF MASSACHUSETTS,
> SUPREME JUDICIAL COURT, April 17, 1933.

Hon. CHARLES F. HURLEY, *Treasurer and Receiver General, State House, Boston, Mass.*

DEAR SIR: — The budget recommendations of His Excellency the Governor submitted to the General Court under date of January 24, 1933, contained this passage: "The Budget submitted provides for a reduction in the appropriation for the salaries of the Justices of the Supreme Judicial Court and of the Governor of the Commonwealth, which salaries under our Constitution it is impossible for you to reduce without the consent of the Justices and of the Governor. You may consider this Message my consent,