STATE *ex rel.* KNOX, ATT'Y GEN., *v.* GULF, M. & N., R. Co.*
SAME *v.* STONE.

(En Banc. June 1, 1925. Suggestion of Error Overruled July 7, 1925.)

[104 So. 689. Nos. 25044, 25045].

1. TAXATION. *"Income tax" held not subject to constitutional require-ment of taxing property in proportion to value and assessment under general laws according to value.*

   An "income tax" is an excise, and not a tax on property within the meaning of the requirement of section 112 of the state Consti-tution, that property shall be taxed in proportion to its value, and shall be assessed for taxes under general laws and by uni-form rules according to its true value.

2. CONSTITUTIONAL LAW. *Taxation. If all of same class for taxation are taxed alike, equality clauses of state and federal Constitutions are complied with.*

   The legislature may make a reasonable classification of the subjects of taxation, and, if all of the same class are taxed alike, the equality clauses of both the state and federal Constitutions are complied with.

3. CONSTITUTIONAL LAW. *Taxation. Income tax, graduated according to amount of income, held not to violate requirement of equality of taxation; income tax, graduated according to amount of in-come, does not deny equal protection of laws.*

   A tax on income, graduated according to the amount of the in-come, does not violate either the equality clause of section 112 of

70

the state Constitution nor the equal protection of the laws clause of the Fourteenth Amendment to the federal Constitution.

4. CONSTITUTIONAL LAW. *Statutes. Taxation. Exemption from income tax, resting upon classification which legislature has power to make, held not to violate equality clause of Constitution; exemption from income tax, resting on classification which legislature has power to make, held not to deny equal protection of laws.*

An exemption from income tax, which rests upon classification which the legislature has the power to make, does not violate the equality clauses of either the state or federal Constitutions.

5. CONSTITUTIONAL LAW. *Taxation. Constitutional provision for redemption of property from tax sales held self-executing; statute providing for sale of property for nonpayment of taxes is not void for failure to provide for redemption of property.*

Section 79 of the Constitution, which provides for the redemption of property from sales thereof for the nonpayment of taxes, is self-executing, and a statute providing for the sale of property for the nonpayment of taxes is not void because it fails to provide for the redemption of the property.

6. TAXATION. *Constitutional requirement that taxes shall be assessed by assessor and collected by sheriff held not to apply to income taxes.*

The requirement of section 135 of the state Constitution that taxes shall be assessed by the assessor and collected by the sheriff has no application to income taxes, but only to such as can only be fixed by an assessment of, and is primarily a charge against, property.

7. COMMERCE. *Tax on net income is not burden on interstate commerce, although included therein is income derived in whole or in part from such commerce.*

A tax on net income is not a burden on interstate commerce, although included therein is income derived in whole or in part from interstate commerce.

8. TAXATION. *State may impose tax on net income of residents and corporations created by it, and may include therein income derived from business without state.*

A state imposing a tax on net income of residents therein and corporations created by it may include therein income derived from business without the state.

9. CONSTITUTIONAL LAW. *Sale of land for payment of income taxes held not to deprive owner of property without due process of law.*
The sale of land for the payment of income taxes, due by the owner thereof, made by the sheriff in the manner prescribed by law for sales under an execution on a judgment, does not deprive the owner of the land of property without due process of law.

10. CONSTITUTIONAL LAW. *Statutes. Constitutionality of provision of statute cannot be raised by one not affected thereby; if separable from remainder of statute, invalid portions leave remainder valid.*
The constitutionality of a provision of a statute cannot be raised by one not affected thereby, if it is separable from the remainder of the statute.

ANDERSON and McGOWEN, JJ., dissenting.

*Headnote 1.  Taxation, 37, Cyc., pp. 707, 766; 2.  Taxation, 37 Cyc., pp. 746, 747; 3.  Constitutional Law, 12 C. J., Section 884; Taxation, 37 Cyc., p. 766; 4.  Constitutional Law, 12 C. J., Section 883; Taxation, 37 Cyc., p. 739; 5.  Constitutional Law, 12 C. J., Section 133 (Anno); Taxation, 37 Cyc. pp. 1381, 1382 (Anno); 6.  Taxation, 37 Cyc., p. 728 (Anno); 7.  Commerce, 12 C. J., Section 126 (Anno); 8.  Taxation, 37 Cyc., p. 811; 9.  Taxation, 37 Cyc., p. 1334; 10.  Constitutional Law, 12 C. J., Section 177; Statutes, 36 Cyc., p. 982.

*(1) Authorities discussing the question of constitutionality of "income tax" are collated in notes in 27 L. R. A. (N. S.) 864, L. R. A. 1915B, 569; 26 R. C. L., p. 153.  (3) The question as to whether income is "property" within constitutional limitations on taxation, see notes 11 A. L. R. 313, 25 A. L. R. 758, 26 R. C. L.; pp. 152-154.

APPEAL from circuit court of Newton county.
HON. G. E. WILSON, Judge.
Action by the state, on the relation of Rush H. Knox, attorney general, against the Gulf, Mobile & Northern Railroad Company.  Action by the state of Mississippi, on the relation of Rush H. Knox, attorney general, against V. E. Stone.  From a judgment for defendants, plaintiff appeals.  Cases considered together on appeal.  Reversed and remanded.

*Rush H. Knox,* Attorney General, and *J. W. Cassedy, E. C. Sharp* and *Creekmore & Creekmore,* for appellant.

I.   All presumptions and constructions are in favor of the Validity of the Act.   *Richards* v. *City Lbr. Co.*, 101 Miss. 678; *Darnell* v. *Johnson*, 109 Miss. 570; *Johnson* v. *Reeves*, 112 Miss. 227; *State* v. *Wheatley*, 113 Miss. 555; *University* v. *Waugh*, 105 Miss. 623; Colley's Constitutional Limitations (7 Ed.), pp. 227, 228, 232, 233, 236, 242, 252, 254, 256; *Natchez R. R. Co.* v. *Crawford* (Miss.), 55 So. 596; *State* v. *L. & N. R. R. Co.*, 53 So. 454 (Miss.); *State* v. *Henry*, 87 Miss. 125; *Hart* v. *State*, 87 Miss. 171.

II.   The act does not violate section 112 of the Constitution.   Sec. 112, Constitution; *Hattiesburg Gro. Co.* v. *Robertson*, 126 Miss. 34, 88 So. 4, 26 R. C. L. 35 and 141 et seq.; *Brushaber* v. *Union R. R. Co.*, 240 U. S. 1, 60 L. Ed. 493; *Glasgow* v. *Rowse*, 43 Mo. 479; *Ludlow* v. *Wallbrick*, 272 Mo. 339, 205 S. W. 196; *Waring* v. *Savannah*, 60 Ga. 93; *Purnell* v. *Page*, 133 N. C. 125, 45 S. W. 534; *State* v. *Philadelphia R. R. Co.*, 45 Md. 361, 24 A. R. 511; 4 Cooley on Taxation (4 Ed.), sec. 1743, p. 3477; 4 Cooley on Taxation, (4 Ed.), secs. 1751 and 1752; Cooley's Constitutional Limitations (7 Ed.), 680; *Thomas* v. *U. S.*, 192 U. S. 363, 48 L. Ed. 481; Judson on Taxation (2 Ed.), par. 567, p. 645, 26 R. C. L. 24; Black on Income Taxes (3 Ed.), par. 44, p. 31, 26 R. C. L. 142; *Commonwealth* v. *Werth*, 116 Va. 604, 82 S. E. 695, 1916 B Ann. Cas. 1263; *Adams* v. *Bank*, 78 Miss. 532; Code 1906, Secs. 3775, 3784, 3789, 3790, 3800, 3801, 3813, 3823, 3824, 3830, 3849, 3852, 3855, 3856, 3857, 3858, 3862, 3872, 3876, 3877, 3884, 3886, 3888, 3890; Constitution 1869, art. 12, sec. 20; *Adams* v. *Kuykendall*, 83 Miss. 571; *Daily* v. *Swope*, 47 Miss. 386; *Vassar* v. *George*, 47 Miss. 121; *Mississippi Mills* v. *Cook*, 56 Miss. 40; *Bank* v. *Worrell*, 67 Miss. 47; *Adams* v. *Bank of Oxford*, 78 Miss. 535; *Winona* v. *Bank*, 69 Miss. 663; *Alexander* v. *Thomas*, 70 Miss. 517; *Enochs* v. *State*, 133 Miss. 103; *Coca Cola Co.* v. *Skillman*, 91 Miss. 677; *Ins. Agency* v. *Cole.* 87 Miss. 646; *Bank* v. *Worrell*, 67 Miss. 47; *Barataria Canning Co.* v. *State*, 101 Miss. 890; *Holberg* v. *Macon*, 55 Miss. 112; *State* v. *Widman*, 72 So. 782; *Postal Tel. Co.* v. *Robertson*, 116 Miss. 204; 26 R. C. L., sec. 124, p. 152.

II-A.   Section 5 of the Act does not make tax a property tax.   Section 5, Income Tax Act; Section 30, Income Tax Act; Section 31, Income Tax Act; *Flint* v. *Stone Tracy Co.,* 1912 B Ann. Cas. 1316; *Thompson* v. *Kreutzer,* 112 Miss. 165; *Thompson* v. *McLeod,* 112 Miss. 383; *Adams* v. *Y. & M. V. R. R. Co.,* 75 Miss. 275; *Norsworthy* v. *Roseberry,* 135 Miss. 845; Lewis' Sutherland, Statutory Construction (2 Ed.), 410-411; *McIntyre* v. *Ingraham,* 35 Miss. 28; *Koch* v. *Bridges,* 45 Miss. 247; *Yerger* v. *State,* 91 Miss. 802; *Wray* v. *Kelly* (Miss), 53 So. 492; *Green* v. *Weller,* 32 Miss. 650; *N. O. & N. E. R. R. Co.* v. *Hemphill,* 35 Miss. 17.

III.   The act does not violate section 135, state Constitution.   *Enochs* v. *State,* 133 Miss. 143; *State* v. *Adler,* 68 Miss. 487; *Thibodeaux* v. *State,* 69 Miss. 683.

IV.   Act need not state for what purpose tax is imposed.   Laws 1918, p. 88; Laws 1920, p. 103; Laws 1922, p. 98; Laws 1924, p. 107.

V.   The act does not conflict with the commerce clause of the Federal Constitution.   *U. S. Glue Co.* v. *Oak Creek,* 62 L. Ed. 1141, 247 U. S. 321; *Underwood Typewriter Co.* v. *Chamberlain,* 65 L. Ed. 169, 254 U. S. 113; *Shaffer* v. *Carter,* 64 L. Ed. 445, 252 U. S. 36.

VI.   The act is not violative of the Fourteenth Amendment to the Federal Constitution—the exemptions in the act do not invalidate it.   Sec. 201, Model Income Tax Act; Laws New York, 1917, ch. 726; Laws Mass., 1921, ch. 156, sec. 2; Income Tax Act of Ore., sec. 14, sub-sec. 10; *Standard Lbr. Co.* v. *Pierce* (Ore.), 228 Pac. 812; *Bells Gap R. R. Co.* v. *Pennsylvania,* 33 L. Ed. 892, 134 U. S. 232; *Flint* v. *Stone Tracy Co., supra; A. C. L. Ry. Co.* v. *Daughton,* 67 L. Ed. 1051, 262 L. Ed. 413; *Fort Smith Lbr. Co.* v. *Arkansas,* 64 L. Ed. 396, 251 U. S. 532; *Billings* v. *Illinois,* 47 L. Ed. 403; 188 U. S. 102; *Keeney* v. *N.*

*Y.,* 56 L. Ed. 305, 222 U. S. 536; *Mills* v. *Cook,* 56 Miss. 40; *Adams* v. *Tombigbee Mills,* 78 Miss. 676; *Harrison Co.* v. *G. C. M. A.,* 126 Miss. 729.

VII. Even if exemption of banks and others be held invalid, the act will not be struck down. Sec. 42, Income Tax Act, 1924; *Adams* v. *Standard Oil Co.,* 97 Miss. 879; *American Express Co.* v. *Beer,* 107 Miss. 535; *Johnson* v. *Long Furniture Co.,* 113 Miss. 377.

VIII. State may tax incomes of residents and domestic corporations derived from sources both within and without the state. *Schaffer* v. *Carter, supra; Maguire* v. *Commissioner,* 230 Mass. 503, 120 N. E. 162; *Maguire* v. *Trefry,* 64 L. Ed. 789, 253 U. S. 12.

IX. The right to question the constitutionality of the income tax act, or any provision thereof, must be bottomed on the defendant's own situation. *Shaffer* v. *Carter, supra;* 6 R. C. L. 89-90; *N. O. M. & C. R. R. Co.* v. *State,* 110 Miss. 305; *American Express Co.* v. *Beer, supra; Stauffer* v. *Crawford* (Mo.), 248 S. W. 581; *Pugh* v. *Pugh,* (S. D.), 32 L. R. A. (N. S.) 954 and note; *Rosenthal* v. *N. Y.,* 57 L. Ed. 212, 226 U. S. 260; *Underwood Type. Co.* v. *Chamberlain,* 65 L. Ed. 165, 254 U. S. 113.

X. Questions presented by demurrer which have no basis in defendant's situation. *American Express Co.* v. *Beer,* 107 Miss. 535.

*Deavours & Hilbun* and *Flowers, Brown & Hester,* for appellee.

I. The law is clearly violative of section 112 of our Constitution. The supreme court of the United States condemned the exercise of power attempted by the Congress of the United States. Congress asked the states to deliver a new installment of power. The states gave

it in the Sixteenth Amendment.  If the rule appellant contends for in the present case had been adopted in the Pollock case there would have been no necessity for the Sixteenth Amendment.

If there were nothing to warrant our assumption that this court will follow the supreme court of the United States on a question of a general nature like this except the decision in the Hattiesburg Grocery Company case that would be sufficient.  In that case the Pollock decision was recognized as a ruling authority.  The opinion in the Hattiesburg Grocery Company case is quoted as a large part of the brief for appellant but in fact commits this court to reasoning that should condemn the law attacked herein.

For our purposes here we may stop with the statement that all taxes on rents from property and upon the revenues derived from property of whatever nature are taxes on property.

Under the operation of the equality provisions and the requirement that taxes shall be imposed according to value it is intended that the taxpayer who owns property worth five thousand dollars shall pay five times as much as the man who owns property worth one thousand dollars; that the man with taxable property worth twenty-five thousand dollars shall pay twenty-five times as much as the man who has taxable values of one thousand dollars.  Under this 1924 law the tax is not imposed in proportion to value but the rate increases with the increase of values.  The man with an income of five thousand dollars would pay eight and one-half times as much taxes as the man with the income of one thousand dollars, the man with an income of twenty-five thousand dollars would pay eighty times as much as the man with an income of one thousand dollars.

This court in the Hattiesburg case recognizes three things:  (1)  An income tax has in it some of the elements of a tax on property; (2) such a tax has in it some of the elements of a tax on persons; (3) such a tax must

conform to section 112. It is as if the court had said: "Such a tax is a burden upon property and is, also, a burden upon persons and a law imposing it can operate only up to the point at which it begins to distribute unequally the burdens of government in contravention of section 112." Furthermore, the court reasons about income as a species of property. It is said that to deny the right to tax it because income is derived from other property would continue the exemption till such time when the derived property should have become confused with other property and lost its identity as income. The court recognizes that income tax laws are circumscribed by section 112. The name we give the tax is not important. The effect of it is the material thing. No disposition is shown in the Hattiesburg Grocery Company decision to break away from the large majority of courts at the head of which stands the United States supreme court. Our present law is patterned largely after the Federal Act of 1913 and so closely does it resemble it that by section 43 of our law the Rules and Regulations of the Treasury Department are made applicable to our Statute.

The amendment of section 112 submitted to the people of this state in 1924 was as necessary to authorize a graduated income tax law bearing upon all incomes as the Sixteenth Amendment was to empower the Congress to impose a tax reaching all incomes without apportioning any part of it among the states according to population. Congress suggested a fresh investiture of power and got it; our legislature suggested the same thing and did not get it.

We have said above that "We are here now at the same point in the story of income tax legislation in this state that the Federal supreme court marked with the Pollock decision in the history of Federal income taxation." This is a point which practically every state has to pass. We have called attention to the fact that in the year 1924, three states, besides Mississippi, refused to vest in their respective legislatures the power to enact

such law. The state of Massachusetts adopted its forty-fourth Amendment in 1915 expressly authorizing taxation of incomes. Any authority from that state must be used in the light of that amendment. Opinion of Justices, 220 Mass. 613, 108 N. E. 570; *Trefry* v. *Putman,* 227 Mass. 522, 1917-F, L. R. A. 806; 227 Mass. 523, 130 N. E. 99; 142 N. E. 829. Wisconsin adopted an amendment in 1908 authorizing a graduated income tax. *Bolens* v. *Frear,* 148 Wis. 456, 1915 B 569. And South Carolina has in section 1, article 10, of its Constitution the following: "That the general assembly may provide for a graduated tax on incomes." The equality and uniformity clause in that constitution was similar to ours. *Alderman* v. *Wells,* 85 S. C. 507, 27 L. R. A. (N. S.) 864. Oklahoma has a similar constitutional provision; so has Kentucky. The same is true of California, North Carolina, Tennessee, Texas and Virginia. In fact we have not been able to find a weakness in the statement of the Alabama court in *Eliasburg Bros.* v. *Grimes,* 86 So. 56, 11 A. L. R. 300, that: "Where a graduated or unequal tax has been laid on incomes express authority is found therefor in their constitutions side by side with the general provisions for uniformity or equality." In fact the Alabama decision excepts from this general statement the courts of Georgia and Missouri when it is not clear that even these states have levied and collected a graduated income tax without express warrant therefor. We have added several states to the enumeration made by the Alabama court. It seems to be true that if Mississippi should uphold this graduated tax in the face of section 112, it will be the first state in the Union to justify such a tax in the presence of a constitutional provision requiring equality and uniformity and taxation according to value.

We have not found that any state court, since the decision in the Pollock case, has adopted any rule different from the conclusion reached in that decision. The Georgia court and the Missouri court spoke several decades before the decision in the Pollock case. And the Missouri

court indicated in *Ludlow-Gaylor Wire Co.* v. *Wollbrinck* (1918), 257 Mo. 339, that it would not at that time take the position that a tax on income is not a tax on property had it not previously committed itself in 1869 in the case of *Glasgow* v. *Rowse.*

We call to the court's attention the further fact that a large number of the courts go further than did the supreme court of the United States in the Pollock case. Such courts hold that the income itself is property. The entrenched position of the supreme court of the United States is that a tax on profits and returns from property is a tax on the property from which such income is derived. But other courts go further and say that the thing derived is itself property and taxable as such and that a tax on incomes is a tax on property, the incomes themselves being the property. See especially *State* v. *Pinder,* 30 Del. 416, 108 Atl. 43; *Opinion of Justices* (N. H.), 120 Atl. 629.

To support the doctrine that a tax on incomes derived from property, whatever the nature of the property, is a burden on the property from which the income is derived we cannot add to the authorities and arguments found in the opinion of Chief Justice Fuller and in that of Mr. Justice Field in the Pollock case. When we have the results of the labored investigation of these two learned judges aided by the able lawyers who appeared in that case it would appear to be a fruitless undertaking on our part to try to furnish further support for their conclusion, especially since the conclusion the court announced in that case has been since that time accepted as a part of our jurisprudence.

Furthermore, this 1924 law treats the tax as one imposed upon property. "The word dividend means any distribution made by a corporation, association, trust or estate, to its shareholders or members, whether in cash or other property or its own stock;" Section 2, Sub. par. (d). "There is hereby assessed and levied, to be collected and paid . . . upon the entire net income."

Section 4, 1st par.  "A like tax is hereby imposed and shall be assessed, levied and collected  . . .  upon and with respect to the entire net income as herein defined . . .  from all property owned  . . .  in this state." Section 4, 2nd par. from last.  "The tax imposed by law . . .  and in addition to being a tax against the property, business, trade, profession or occupation" shall also be a personal debt of the taxpayer.  Section 5.  Section 6 of the act deals exclusively with property gains and profits and losses; and sub. par. (b) treats tangible, existing property as income.  The thing taxed is the income or profits whether it is still in hand or not.  If it is in hand it is taxed and there is a lien on it to secure the tax.  Section 11 includes in the items to be taxed "gains, profits and income  . . .  in whatever form paid" from "dealings in property, whether real or personal growing out of the ownership or the use of any interest in such property, also interest, rent, dividends, securities . . .  and incomes derived from any source whatever." In the case of a non-resident there is a tax laid on his property earnings within the state; interest on bonds, notes or other interest bearing obligations; dividends from domestic corporations; "rentals and royalties from property or any interest in property within the state, gains, profits and income from the sale, operation or ownership of any property within the State."  Section 15, (1) sub. par. (a).  And section 17 provides that the tax imposed by section 4 of this act shall apply to the income of "estates or any kind of property held in trust."  The act specifically and expressly includes the very items which the supreme court of the United States says cannot be taxed without taxing property.  In taxing the tangible present-in-hand returns on stock, the law fastens upon property which the United States supreme court said was within the protection of the apportionment provisions of the Federal constitution despite the presence of the Sixteenth Amendment.  *Eisner* v. *McComber*, 252 U. S. 189, 64 L. Ed. 521.  The imposing

words in our 1924 law are "assessed and levied, to be collected and paid." The Federal Act uses the words "levied, collected and paid." Sub. par. (a), section 11 of our 1924 Act describing the subjects of the tax is *verbatim* the same as sub. par. (a) of section 213 of the 1921 Federal Act. This is significant. It means that we are trying to tax all incomes "from whatever source derived" in the same manner as does the general government. But the Federal government got the constitutional barriers out of the way. We have tried to get ours out of the way and failed. Our 1924 Act levies the tax not upon any acts, or occupations or businesses. It is directly and expressly levied upon all incomes "from whatever source derived." Why refer to "source from which derived?" This reference recognizes the differences between incomes determined by the sources thereof. The words "from whatever source derived" are taken from the 1921 Federal Act and that Act in turn takes them from the Sixteenth Amendment and the Amendment got the idea from the Pollock decision.

II. When it is undertaken to uphold this as an excise tax law the state runs into numerous difficulties and absurdities. Turn to the definition of excise given by the court in the Hattiesburg Grocery Company case to determine, if possible, the characteristics of this apparently elusive class of taxes. See, also, 26 R. C. L. 34; *Brown* v. *Maryland,* 25 U. S. 12, Whet. 446 (6:688); *Philadelphia, etc., Mail S. S. Co.* v. *Penn.,* 122 U. S. 326, 30 L. Ed. 1200; *Postal Tel. Co.* v. *Adams,* 155 U. S. 688, 39 L. Ed. 311.

III. This act imposes a burden on interstate commerce. Transportation is essential to commerce, or rather it is commerce itself; and every obstacle to it, or burden laid upon it by legislative authority is regulation. *R. R. Company* v. *Husen,* 95 U. S. 465, 24 L. Ed. 527; *Helena-Grendale Ferry Co.* v. *State,* 101 Miss. 65,

138 Miss.—6.

57 So. 362; *Adams Express Co.* v. *Ohio State Auditor,* 165 U. S. 185, 17 Sup. Ct. 604, 41 L. Ed. 965.

But counsel for the state answer that in several cases, namely, *U. S. Glue Co.* v. *Town of Oak Creek,* 247 U. S. 321, 62 L. Ed. 1135; and *A. C. L. Railroad Co.* v. *Daughton,* 67 L. Ed. 1051, the supreme court of the United States has held that an income tax may be imposed upon the earnings derived from interstate commerce. This is quite true. The supreme court in the cases mentioned did so hold. And we might add that in the old case of *Steamship Co.* v. *Penn.,* 122 U. S. 326, 30 L. Ed. 1200, the same thing was held. But we direct attention to the qualifying phrase used in this case which was quoted in the Oak Creek case, "but in imposing such taxes care should be taken not to interfere with, or hamper, directly or indirectly, interstate or foreign commerce." See *Leloup* v. *Port of Mobile,* 127 U. S. 640, 32 L. Ed. 311.

IV. An excise tax cannot be imposed upon income derived from the sale of property. *Thompson* v. *Krutzer,* 112 Miss. 165, 72 So. 891. The sacred right of ownership of property antedates the Christian Era. It is as old as civilization. When God called Moses to the mountain top and gave to him the law that was to govern the people, this right was distinctly recognized. Ten Commandments gave He to Moses and the tenth of these was with respect to the sacred right of ownership of property. Since the citizen has the exclusive right of disposing of his property the state has no authority to levy a privilege tax on the proceeds of the sale or on any part of such proceeds, for a "tax on a thing is a tax on all its essential attributes; and a tax on an essential attribute of a thing is necessarily a tax on the thing itself." *Thompson* v. *Kreutzer, supra.*

V. An excise tax cannot be given extraterritorial effect. 26 R. C. L. 295. If this be an excise tax then it cannot be imposed upon the performance of an act or the

enjoyment of a privilege exercised in Alabama or Tennessee. That a state cannot impose an excise tax upon an act or privilege done or had beyond its own boundaries is so apparent as to need no citation of authority. When the state treats this tax as an excise for one purpose it must do so for all purposes. To say that it is an excise when attacked on the ground of its violation of section 112 but to all other intents and purposes is to be treated and dealt with as a property tax, is to admit that it partakes more of the nature of a property than of an excise tax.

VI. Equal protection of the law. Failure to impose tax on others belonging to class similar to that to which appellee belongs. Banks and building and loan associations are corporations organized for profit. They are, as a matter of common knowledge, far more profitable as business ventures than common carrier railroads. The state takes the position that the legislature has the power to exempt property from taxation. This may be true, but in a general revenue measure of this character the legislature is without power to discriminate between persons occupying the same class by taxing one and refusing to tax the other. The exemption is arbitrary and unreasonable.

Discrimination, in order to be valid, must be founded upon a reasonable distinction in principle, otherwise the exemption is pure favoritism and a denial of the equal protection of the laws. *American Sugar Refining Co.* v. *Louisiana,* 179 U. S. 89, 45 L. Ed. 102. It must have a reasonable basis, resting upon a real distinction, *Citizens Tel. Co.* v. *Fuller,* 229 U. S. 322, 57 L. Ed. 1206; *Connally* v. *Union Sewer Pipe Co.,* 184 U. S. 540, 46 L. Ed. 679; *Ballard* v. *Miss. Cotton Oil Co.,* 81 Miss. 507, 34 So. 533, 62 L. R. A. 407, 95 Am. St. Rep. 476.

The granting of exemptions and other forms of discrimination in taxation does usually have a tendency to "strengthen" the favored class. In fact, we may safely

vouchsafe the assertion that it was this and nothing more which the equal protection clause was inserted to prevent. The burdens of the expense of government must fall on all alike. No class can be singled out and "strengthened" at the expense of others. It is useless to pursue this subject further than to refer to the opinion of Mr. Justice Field in the Pollock case.

VII. If section 18 of the act is invalid as denying appellee equal protection of the laws, then the entire act is invalid. The attorney-general makes the contention that: "Even if the exemption of banks and others be held invalid, the income tax act will not be struck down." And he presents the argument that this act may be "amended" by the court so as to include the corporations mentioned and thus "make them liable for the income tax along with the appellee." And to support this theory he cites *Adams* v. *Standard Oil Company, supra,* We do not think the case referred to can be relied on as an authority in support of this point. The reason is that in that case the court was dealing with a separate section of the Code Chapter dealing with various privilege taxes. In fact it was merely an independent section in the general Code Chapter under which all privileges were levied. The invalidity of this section did not go to the whole chapter. Without this section there was still left a complete scheme of privilege taxation.

To hold this clause invalid but to permit the law to stand would have the effect of actually levying a tax upon one of the largest classes of business in the state. The court would be doing what the legislature expressly refused to do, namely, tax state banks and domestic buildings and loan associations. If the legislature saw fit to refuse to tax this, the largest single class of business in the state, how can it be said that it would have passed the act without this exemption in it? *Connally* v. *Union Sewer Pipe Co., supra.*

VIII. Sale under execution—no right of redemption provided. Due process of law. Section 5 of the Act provides that the tax due and payable under this law shall be "personal debt from the taxpayer liable to pay the same to the state of Mississippi."

Section 31 provides that: "Every tax imposed by this Act, and all increases, interest and penalties thereon, shall become from the time it is due and payable, a personal debt, from the person or persons, liable to pay the same to the state of Mississippi."

Section 30 then provides the machinery for enforcing collection. Of course if the taxpayer "wilfully refuses" to "pay" any tax when requested to do so by the Commissioner or one of his agents, such taxpayer can, under the provisions of section 34, be fined five hundred dollars and sent to jail for six months. But assuming that this rather harsh punishment be, by the grace of the Commissioner, superseded by the more humane procedure of making the debt out of the property of the taxpayer, then section 30 tells how to do it.

And when this "judgment" is entered on the roll, it "thereupon becomes a lien upon" the property of the person against whom it is issued. The sheriff is required to proceed "in the manner required by law with respect to executions." And the same fees are allowed to him. This is not even treated as a tax sale. Tax sales are required by law to be made on the First Monday in April. This is a sale under execution and can be made on the First Monday in any month. A sheriff selling land at a tax sale must offer the land in tracts of forty acres each and if a forty brings the amount due, that is all he sells. But at a sale under execution he proceeds by offering the land in tracts of one hundred sixty acres each.

Section 6972, Hemingway's Code, requires the sheriff to file all conveyances of land sold at tax sales to individuals in the office of the chancery clerk there to remain for two years.

Section 6967 requires the clerk to give notice to the owner of such land at least sixty days before the expiration of the period of redemption, warning him that his land has been sold and that the title will become.absolute in the purchaser unless redeemed by a certain date.

No provision for redemption is provided. The conveyance is executed forthwith upon the payment of the purchase money and such conveyance ''shall vest in the purchaser all the right, title and interest which the defendant had in such lands.'' The land is gone. It no longer belongs to the defendant. It has been sold under execution and a conveyance is in the hands of the purchaser. The purchaser is entitled to immediate possession.

We submit that it is no answer to say that section 79 of the Constitution is self executing. That the courts will afford a remedy where the legislature furnishes none. Due process of law comprehends more than giving one the right to bring a suit to enforce his rights. The proceeding authorized is extraordinary and unusual, without precedent in the legislative and judicial history of the state. It has the effect of giving judicial sanction, and thereby conclusiveness to the sale and transfer of property when the legislature was without power to direct such sale and transfer. The so-called ''warrant'' of the Commissioner is not a judgment. It is but the *fiat* of an administrative officer and is not entitled to be treated and dealt with as a judgment. Judgments are only rendered after a full and fair hearing, in a court of competent jurisdiction to which the defendant has been duly and legally summoned and where he is given an opportunity to be heard. They are the final result of legally constituted proceedings, according to the law of the land, ''which hears before it condemns; which proceeds upon inquiry and renders judgment only after trial.'' *Brown* v. *Board of Levee Com.,* 50 Miss. 468.

In the *Union Savings Bank* v. *City of Jackson,* 84 So. 388, it was held that section 79 is self executing; and

that if the legislature fails to provide a scheme, the courts will afford relief. We call attention to the fact that in that case the court was dealing with a special improvement statute, chapter 260, Laws 1912. This statute is entirely different from the Income Tax Act.

Another vast difference between the 1912 Act and the Income Tax Act is that under the 1912 Act only the property actually benefited by the improvement is affected by the judgment. It is a proceeding *in rem* only.

The extraordinary character of the statute condemns it. That after his property has been taken from him under this unusual process he may apply to the courts and start a long and expensive litigation to recover it, is not the kind of "redemption" section 79 contemplates. The citizen cannot be required to become an actor, under the penalty of losing his property. He may enjoy his own secure under constitutional guaranty. *Delta Levee Board* v. *Dancy,* 65 Miss. 335; *Pool* v. *Ellis,* 64 Miss. 555.

And at any time during the two-year period all the owner has to do is go to the courthouse, pay the taxes due on his property, plus interests and costs, and his property is redeemed. There is no necessity for court proceedings. There is no necessity of employing coun sel. The right to redeem is absolute and all he has to do is pay the money. This is the kind of "redemption" the Constitution contemplates. Redemption by purchase and not by suit.

IX. Uncontrolled power of commissioner to levy and assess taxes—power of tax assessor usurped. The assessor is a constitutional officer and his duties and powers cannot be transferred by the legislature to another officer or a board. *State* v. *Yonella,* 70 Miss. 710, 37 Cyc. 983.

It is no answer to the argument that the legislature cannot transfer the duties and powers of the assessor, a constitutional officer, to another officer or a board, to say that the tax in question is purely a privilege or excise tax, for the Act of 1924 clearly contemplates a tax the amount of which is to be arrived at by ascertaining and

determining a principal to which is to be applied the statutory rate. That ascertainment and determination must be through the assessor so long as the Constitution remains unamended in that respect.

These principles find support in cases like *French* v. *State,* 52 Miss. 759, where it was held that the sheriff and tax collector has rights under the Constitution which cannot be taken from him. They, also, find support in cases like *State* v. *Thibodeaux,* 69 Miss. 92, in which it was held that the revenue agent did not have and could not under the Constitution be given the power to collect a privilege tax under the tax collector (the sheriff) had refused or knowingly failed to collect. See, also, *State* v. *Bank,* 69 Miss. 99.

X. Unconstitutional delegation of legislative powers. Under the provisions of the statute now being considered, the sole administrative function is vested in the chairman of the tax commission, termed "Commissioner." See section 37. This makes him an administrative or executive officer. Under section 38 of the Act the function of adopting regulations is given him; and as the Act is departmentally construed this delegates to, and vests in him legislative functions. We next find him, section 36, sitting as a member of a court of record, with judicial powers to pass upon the correctness of his own administrative acts, and to construe and enforce his own regulations; and the appellate procedure provided merely gives the chancery court of Hinds county, to which the hapless citizen of remote sections of the state must appeal from the final judgment of the Commissioner, the only authority to review the proceedings of the Commissioner's court, a *de novo* hearing in the chancery court not being given the citizen as a matter of right.

The Act is equally vague, uncertain and indefinite as to the apportionment between states of operating revenues, operating expenses, losses and net income. All these matters are left to be legislated upon by the Gov-

ernor and the Commissioner according to processes or formulas which they, in their legislative wisdom, may prescribe.

The citation of a relatively few leading cases will, we think, sustain the proposition for which we contend. *Stoutenburgh* v. *Hennick,* 129 U. S. 141; *Mich. Cen. R. R. Company* v. *Powers,* 201 U. S. 45; *Gorham Mfg. Co.* v. *N. Y. Tax Commission,* 266 U. S. 265.

There is a line of cases beginning with *U. S.* v. *Eaton,* 144 U. S. 697, in which statutes seeking to prescribe a criminal offense by the regulation of a department or board have been held unconstitutional. Such a case is the case of *U. S.* v. *Balsingame,* 116 Fed. 654, in which a law making it a crime to violate any rule made by the secretary of the Interior for the protection of forest reservations was held an unconstitutional delegation of legislative power to a ministerial officer. A later case to the same effect is *Pittsburgh Melting Co.* v. *B. · & O. R. R. Co.,* 229 Fed. 214.

There is another line of cases following the familiar decision of the supreme court of United States in *Yick Wo* v. *Hopkins,* 118 U. S. 356, which hold that it is an unconstitutional delegation of legislative power to place within the arbitrary discretion of a board the power to grant or deny license permitting the applicant to conduct a business or engage in a profession. See, also, *Noel* v. *People,* 58 S. E. 616; *People* v. *Sholem,* 128 N. E. 377; *Wyeth* v. *Thomas,* 200 Mass. 474, 86 N. E. 925; 12 A. L. R. 1475 and note; *State* v. *G. N. R. R. Co.,* 100 Minn. 455, 111 N. W. 289; *Fite* v. *State,* 88 S. W. 941.

XI. Vested rights disturbed—retroactive effect of the law. It is clear that this Act is objectionable as being retrospective in character. And it partakes of some of the attributes of an *ex post facto* law, for no matter when the gain or profit may have actually accrued, the tax is to be paid according to the schedule of rates prescribed in this Act. And if the tax is not paid when the Com-

missioner or his agent demands it, the taxpayer is guilty of a crime and can be fined five hundred dollars and sent to jail for six months. The Act fixes the base valuation as of March 16, 1912, if the property were acquired before that date, and this is true whether the property was acquired by purchase, donation, devise or inheritance. If the acquisition of the property occurred after March 16, 1922, as say, on January 1, 1916, the base valuation is fixed as of the date of acquisition. While a reasonable deduction for depreciation or depletion (which could not occur in the case of many types of property, such as unimproved lands, agricultural lands upon which there are no buildings, etc.) is provided by the Act, no allowance is permitted for the *ad valorem* taxes paid upon the property during the interval transpiring between March 16, 1912, or the date of its subsequent acquisition, and the date of sale during a taxable year under the provisions of the Act, *ad valorem* taxes upon property being a deductible item only when paid during the particular year for which the income tax is assessed or levied. (p. 143, Laws of 1924; Regulations, pp. 11-12.)

XII. Appeal—chancery court Hinds county. Section 36 of the Act provides that any taxpayer desiring to appeal from a decision of the Commissioner may do so by filing a petition in the chancery court of Hinds county requesting a "review of the proceedings of the Commissioner." With this petition he must file a solvent bond for double the amount in controversy, and when notice is given to the Commissioner the record is sent up to the chancery court. This court may in its discretion, allow other and additional evidence to be introduced, but a trial *de novo* is not given the taxpayer as a matter of right. The jurisdiction of the chancery and circuit courts is clearly defined in the Constitution. Section 156. And section 159 defines the jurisdiction of the chancery court. There is to be found no intimation of an intention to confer upon this tribunal appellate jurisdiction of any char-

acter. The circuit court is the court in Mississippi having jurisdiction of all matters not vested by the constitution in some other court. Note the language of section 156—''Original jurisdiction of all matters not vested by this Constitution in some other court, and such appellate jurisdiction as shall be prescribed by law.''

In *Power* v. *Robertson,* 93 So. 769, where the court had under consideration the initiative and referendum clause in the Constitution it was clearly pointed out that ''the circuit court has jurisdiction of all questions cognizable in the court that have not been exclusively vested in some other court.''

XIII. Privileges and immunities—gifts to domestic corporations—deductions allowed. Section 12 of the Act provides the deductions allowable. Paragraph 10 of this section provides that contributions, gifts, etc., made to corporations organized and operated exclusively for religious, charitable, scientific or educational purposes, may ''if verified under rules and regulations prescribed by the Commissioner, with the approval of the Governor,'' be allowed as deductions. In the case of a non-resident such deduction is not allowed unless the contribution is made to ''domestic'' corporations of the class enumerated. The objectionable provision in the section is the last sentence therein: ''In the case of a non-resident this deduction shall be allowed only as to contributions or gifts made to domestic corporations, or to such vocational rehabilitation fund.''

As to a resident it matters not whether the charitable institution favored be a foreign or a domestic corporation, but as to a non-resident, only domestic corporations can be considered. This is clearly an abridgment of privileges and immunities guaranteed under the Fourteenth Amendment of the Federal Constitution. A discrimination of this character was condemned by the United States supreme court in *Travis* v. *Yale,* 252 U. S. 60, 64 L. Ed. 460. No additional authority need be cited.

To uphold this law the court will have to remodel, add, substract, eliminate, trim and explain. Redemption rights and procedure will have to be provided to satisfy section 79 of the Constitution; exemptions will have to be removed and the tax made to attach where the legislature has said it shall not attach; the delegation to a single administrative officer of both judicial and legislative powers will have to be explained and justified; the vesting of exclusive appellate jurisdiction in the chancery court of Hinds county of appeals by all income-tax-paying citizens however remote their residence, will demand justification; the imposition of a tax upon the privilege of engaging in business beyond the boundaries of the state is a live question; the taxing of citizens for the privilege of exercising rights heretofore considered natural and inalienable is new, odious and not easy to explain; the exaction of tribute from one whose profits and earnings, made the basis of the tax, accumulated long prior to the passage of the law needs support not yet suggested by the state; the necessity for the bestowal of extraordinary and unusual inquisitorial powers upon one officer or body is not apparent on the face of things. Too many sacred and private rights are put in jeopardy. Private affairs are to be made less private; the area of personal immunity from the intrusion of government agents is to be reduced. It is not unexpected to discover that our people are wedded to the equality rule; that they are afraid to let it get away. They do not know what would happen if they gave it up. They have refused to give it up. The state is here not saying: ''The legislature has the untrammeled power; the people gave it up in 1890; no amendment of section 112 is necessary.'' The route the state invites this court to take in order to avoid conflict with section 112 is the definition route. It is proposed by adopting the word ''excise''—a tern of hidden virtue and of no well-defined meaning—to reach the same result as could have been accomplished if section 112 had been amended as proposed. It is as if the state said:

"We tried to get constitutional authority, but we did not get it. But we can find a way to do the thing without coming in contact with the Constitution and its troublesome restrictions."

Of course, a tax upon earnings from investments of capital or from other property is a tax on property; and when we say this we take issue with few courts—really with none but those of Georgia and Missouri. If the tax were not a direct burden upon the property producing the taxed income there would be no demand for exemptions; nor would there be any fear that bonds of certain kinds would be reduced in value if the returns therefrom were made subject to the tax.

And we submit that there is here no occasion for this court to examine this statute further than is necessary to ascertain that the state is trying to enforce a law which is condemned by section 112. This is the regnant, all-sufficient proposition. The state is asking that an income tax be enforced as specifically and exclusively a privilege tax—not as generically an excise. This court is asked to treat it as not bearing on property to any material extent and as being therefore not amenable to section 112. We say that if the law is allowed to be enforced as written there will have been accomplished "the result which section 112 of the Constitution was adopted to prevent." The shadow will remain but the substance will be gone. The framers of revenue measures need not trouble themselves about the property itself if they can take the earnings without being handicapped by constitutional limitations.

Argued orally by *H. H. Creekmore* and *J. W. Cassedy* for the state, and *J. T. Brown* and *J. N. Flowers,* for appellees.

Reporter's Note: In reporting the case of *Hattiesburg Grocery Company* v. *Robertson, State Revenue Agent,* No. 21739 in 126 Miss. 34, 88 So. 4, 89 So. 369, the dis-

senting opinion of Mr. Justice Sykes on the suggestion of error was not included in the official reports. It is, therefore, appended to this case because of the importance of the questions involved and the present interest attaching to this case. The opinion follows:

Sykes, J. (dissenting). When we held this income tax law constitutional as being an excise and not a property tax, I had serious doubts as to the correctness of this holding, but at that time those doubts did not arise to a degree of certainty which impelled me to dissent. Upon a re-examination of the authorities and a careful analysis of our opinion I have come to the conclusion that we erred, and that the suggestion of error should be sustained.

In my judgment this is a property tax, and as such is violative of section 112 of the Constitution. It is a property tax, because it taxes incomes derived or received from property, real, personal, and mixed; and the unconstitutional tax on property cannot be separated from the tax derived from incomes, professions, callings, and vocations. In the opinion in this case it is said that: "No definition of income can be framed under which it can be dissociated from the activities of the person who produced or received it, so that a tax on income necessarily includes among its elements the production or receipt of property, . . . and to that extent is a tax on the performance of an act resulting in gain to the person performing it, and the rule is, . . . that when the tax is imposed on the performance of an act, it will not be classified as a tax on property, although it is proportioned in amounts to the value of the property used in connection with or produced by the act which is taxed." 88 So. 5.

In my judgment this conclusion of the court is contrary to previous decisions of this court. In the case of *Thompson, Auditor,* v. *Kreutzer,* 112 Miss. 165, 72 So. 891, it was held that chapter 112, Laws of 1912, which pro-

vided for an annual privilege tax, or occupation fee of twenty cents an acre upon each person, etc., pursuing the business of buying, owning, or holding more than one thousand acres of timber lands was a property tax, and therefore violative of section 112 of the Constitution. In the opinion it is stated that: ''Ownership is not a privilege conferred by government, but is one of the rights which governments were organized to protect. . . . In a strict legal sense 'property' . . . is synonymous with the 'right of ownership' and means one's exclusive right of possession, enjoying, and disposing of a thing. . . .

''Property may also be, and in the section of the Constitution here under consideration is, used to signify 'things owned.' In order that a thing may be owned, some one must, of course, have a right to the ownership thereof. A tax on a thing is a tax on all its essential attributes; and a tax on an essential attribute of a thing is a tax on the thing itself. So that a tax on a thing owned is necessarily a tax on the right of ownership thereof; and a tax on the right of ownership of a thing is necessarily a tax on the thing itself. No definition of property can be framed which does not include the right of ownership. Consequently, no tax can be imposed on the right of ownership which is not also a tax on property.''

As I construe this case it means that by virtue of the ownership of property one has the right of possession, enjoying, and using this property in every lawful manner in which he sees proper, and that as a necessary incident to the ownership of this property he has the right to rent, lease, or cultivate the property, if it be land, and that all of these rights are mere incidents of ownership, and that necessarily a tax on the income received from this property is a tax on its user, and therefore a tax on the property itself. It is in reality a tax on the ownership of the property because by virtue of this ownership certain acts are necessarily required of the owner. Nec-

essarily he has to pay taxes or lose his property and a
provident owner necessarily wishes to use this property
either for himself for his personal enjoyment or in order
to derive some income therefrom. The provident owner,
the good citizen, necessarily wants to make his prop-
erty productive and wherever property is providently
used some income is necessarily derived therefrom, and
the right to receive this income is but an incident of the
ownership of the property. A tax upon this right is in-
directly a burden and a tax upon the property itself.
Aside from the ownership of homes, nearly all of the
property owned is owned for the purpose of deriving a
revenue therefrom. If the owner of property were in-
active, the property would be a mere barren waste, and
its ownership would be a detriment to the state. All
provident ownership of property in my judgment nec-
essarily contemplates the exercise of activity by virtue
of this ownership.

The same doctrine enunciated in the Kreutzer case
was reiterated in that of *Thompson, Auditor, v. McLeod,*
112 Miss. 383, 73 So. 193, wherein it was held that chap-
ter 110 of the Laws of 1912, which provided for a privilege
tax upon all persons  .  .  .  pursuing the business of
extracting turpentine from standing trees was a prop-
erty tax. In the opinion in that case it is stated that:
"The privilege, if any, which is taxed, is the privilege
or right of the owner or lessee of pine trees to 'extract
turpentine from standing trees.' "

In other words, the privilege tax in this case was the
activity of the person in extracting turpentine from
standing trees. The privilege tax in the instant case is
the mere, if I may use the expression, inactive activity
of the person to receive his rents or profits from his real
or personal property. Certainly the activity of applying
an ax to a pine tree is much greater than the mere passive
receptivity of one in receiving the rents, issues, and prof-
its from his property. And the court in the McLeod case
says: "It requires no refinement to observe at once that

this is an additional burden of taxation, operating, not indirectly, but directly, upon complainant's property.''

It will be noted that the opinion in the McLeod case refers to the *Pollock Case,* 157 U. S. 558, 15 Sup. Ct. Rep. 673, 39 L. Ed. 759, and the *Hylton Case,* 3 U. S. (3 Dall.) 171, 1 L. Ed. 556. In the case of *Railroad Co.* v. *Robertson, Revenue Agent,* 122 Miss. 417, 83 So. 449, the court refers with approval to the Kreutzer and McLeod cases.

From a careful consideration of the opinions of this court in the three above-named cases I am satisfied that the opinion in this case is contrary to the reasoning in those cases and in direct conflict with them.

Coming now to a consideration of the decisions of other courts: The following quotation from the case of *Pollock* v. *Trust Co.,* 157 U. S. 558, 15 Sup. Ct. Rep. 680, 39 L. Ed. 811, is made in the opinion in the McLeod case: '' 'A tax upon property holders in respect of their estates, whether real or personal, or of the income yielded by such estates, and the payment of which cannot be avoided, are direct taxes,' and 'an annual tax upon the annual value or annual user of real estate appears to us the same in substance as an annual tax on the real estate, which would be paid out of the rent or income. This law taxes the income received from land and the growth or produce of the land. Mr. Justice Patterson observed in *Hylton* v. *United States,* 3 U. S. 171, 1 L. Ed. 556, ''Land, independently of its produce, is of no value.'' ' In the language of the distinguished Coke, 'What is the land but the profits thereof?' ''

If land is the profit thereof, then tax on this income of profit is necessarily a tax on land. The Pollock cases hold that a tax received as income from property is a property tax because the burden placed upon the income by a tax, looking through form to substance, is a burden placed upon the property itself from which the income is derived, and is therefore a property tax.

138 Miss.—7.

The *Brushaber Case,* 240 U. S. 1, 36 Sup. Ct. Rep. 236, 60 L. Ed. 500, 1917B Ann. Cas. 713, 1917D L. R. A. 414, quotes with approval from the Pollock case, and reaffirms the doctrine therein announced.

The later case of *Eisner* v. *Macomber,* 252 U.S. 205, 40 Sup. Ct. Rep. 192, 64 L. Ed. 528, 9 L. R. A. 1570, in referring to the Pollock cases says: In income tax cases "it was held that taxes upon rents and property of real estate and upon returns from investments of personal property were in effect direct taxes upon the property from which such income arose, imposed by reason of ownership."

In the Opinion of the Justices, 220 Mass. 613, 108 N. E. 570, it is held that: "A tax upon the incomes of property is in reality a tax upon the property itself." To the same effect is the very learned and elaborate opinion of the supreme court of Alabama in the case of *Eliasberg Brothers* v. *Grimes,* 204 Ala. 492, 86 So. 56, 11 A. L. R. 300.

In fact our attention has only been called to the decisions of two courts which hold to a contrary opinion, namely, those of Georgia and Missouri. These cases are reviewed and criticised in the Alabama opinions, *supra.* In fact from a later opinion of the supreme court of Missouri it seems that that court doubts very much the wisdom of its former holdings. In the case of *State* v. *Koeln,* 278 Mo. 28, 211 S. W. 31, in the concurring opinion of Justice GRAVES, he states: "The idea that an 'income tax' is, in fact and in law, a tax on property, and therefore violative of our Constitution, rises before us as Banquo's ghost."

I would like for this ghost to be confined to the territorial limits of Missouri, but from the opinion of my brethren his territorial jurisdiction has now been enlarged to include Mississippi.

In conclusion I wish to say that under the above decision the owner of property, as an incident of his ownership, has the undoubted right to receive the income from

this property. That the mere reception of this income is not engaging in any trade, occupation, or calling and that a tax upon this right is a tax upon the property itself and therefore is a property tax, and is violative of section 112 of the Constitution. In my judgment the suggestion of error should be sustained, and the law declared unconstitutional.

ANDERSON, J., joins me in the dissenting views herein expressed.

SMITH, C. J., delivered the opinion of the court.

The question presented for decision in these cases is the validity *vel non* of the Income Tax Act (chapter 132, Laws of 1924), by which a tax is imposed on all but certain excepted net incomes from whatever source derived. The ground on which it is claimed that the act is void is that it is in conflict with the Fourteenth Amendment to the federal Constitution and with several sections of the state Constitution, to which, when necessary, reference will be hereinafter specifically made.

As to the provision of section 112 of the state Constitution that "property shall be taxed in proportion to its value," and "shall be assessed for taxes under general laws, and by uniform rules, according to its true value."

The appellees' contention in this connection is that a tax on income derived from property is a tax on the property from which the income is derived, and, as the tax here imposed is on all income, it was, in so far as it affects income from property, a tax on the property from which the income was derived, which property the Constitution permits to be taxed only in proportion and according to its true value.

This contention is ruled by *Hattiesburg Grocery Co. v. Robertson,* 126 Miss. 34, 88 So. 4, 25 A. L. R. 748, wherein this court, after mature consideration, held that

a tax on income is an excise and is not a tax on the property from which the income may have been derived. As was there pointed out a tax on income from property includes some of the elements both of a tax on property and of a tax on persons, and cannot be classified as strictly a tax on either alone. Property of itself alone cannot produce income,.but must be used or dealt with in some way by a person, before gain or income can be derived therefrom, and no definition of income though derived from property, can be framed which does not include the activities of the person by whom it was produced, received, or enjoyed.

A tax, though not eo nomine on property, but which the owner thereof must pay merely because of his ownership of the property (*Thompson* v. *Kreutzer*, 112 Miss. 165, 72 So. 891), or because of a special use of property without reference to whether or not revenue or gain is derived therefrom (*Thompson* v. *McLeod*, 112 Miss. 383, 73 So. 193, L. R. A. 1918C, 893, Ann. Cas. 1918A, 674), is a tax on the property, and should be in proportion and according to the value thereof. But the tax here imposed is not on the ownership or use without gain of property, but is on the revenue which the activities of the owner causes the property to produce. The taxation of such activities is universal, and is the basis of most of our privilege taxes.

In *Pollock* v. *Farmers' Trust Co.*, 157 U. S. 429, 15 S. Ct. 673, 39 L. Ed. 759, and Id., 158 U. S. 601, 15 S. Ct. 912, 39 L. Ed. 1108, relied on by the appellant in the Hattiesburg Grocery Co. case and by the appellees here, the court recognized the fact that a tax on income is an excise, and the error therein, as in other cases holding that a tax on income from property is a tax on the property from which the income is derived, was caused by the court's referring the income or gain from the property to the property alone, dissociated from the activities of the owner thereof, without which activities there can be no income from property; But it is said that the Hat-

tiesburg Grocery Company case is not controlling here, for the reason that the act here in question expressly designates the tax imposed by it as one on property, and therefore it should be held to be and dealt with as such. This contention is based on section 5 of the act, which provides:

"The tax imposed by this act is in addition to all other taxes imposed by law, and every tax imposed by this act, and all increases, interests and penalties thereon, in addition to being a tax against the property, business, trade, profession, or occupation, as in this act provided, shall also become from the time it is due and payable, a personal debt from the taxpayer liable to pay the same, to the state of Mississippi."

This declaration that the tax-imposed by the act is against the property is qualified by the words "as in this act provided," and as hereinbefore set forth the tax for which the act provides is on property only in the sense that property from which income is derived is one of the elements which enters into the production of such income, and therefore is not on property within the meaning of section 112 of the Constitution. Moreover "the mere declaration contained in a statute that it shall be regarded as a tax of a particular character does not make it such if it is apparent that it cannot be so designated consistently with the meaning and effect of the act." *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, 31 S. Ct. 342, 35 L. Ed. 389, Ann. Cas. 1912B, 1312.

The appellees do not contend that a tax on income is a tax on property in the sense that it is a tax on the money or property which constitutes the gain or revenue of a person and on the aggregate of which the amount of his income is determined. That it is not such a tax, see *Hattiesburg Grocery Co.* v. *Robertson,* 126 Miss. 55, 88 So. 4, 25 A. L. R. 748; *Pollock* v. *Farmers' Loan & Trust Co.,* 157 U. S. 429, 15 S. Ct. 673, 39 L. Ed. 759; Id., 158 U. S. 601, 15 S. Ct. 912, 39 L. Ed. 1108; *Brushaber* v.

*Union P. R. Co.,* 240 U. S. 1, 36 S. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713.

As to the equality clause of section 112 of the state Constitution and the equal protection of the law clause of the Fourteenth Amendment to the Federal Constitution:

The grounds on which it is claimed the act violates the equality provisions of the state and Federal Constitutions are: (1) That all incomes are not taxed therein at the same rate, but the rate is graduated according to the amount of the income; and (2) that by section 18, of the act the income of certain designated corporations is exempted from the tax imposed therein.

Assuming that the equality clause of section 112 of the state Constitution applies to taxes for general purposes other than to such as are *ad valorem,* it is well settled that the legislature may make a reasonable classification of the subjects of taxation, and, if all of the same class are taxed alike, the equality clauses of both the state and Federal Constitutions are complied with. *Holberg* v. *Town of Macon,* 55 Miss. 112; *Vicksburg Bank* v. *Worrell, Tax Collector,* 67 Miss. 47, 7 So. 219; *Clarksdale Ins. Agency* v. *Cole,* 87 Miss. 637, 40 So. 228; *State* v. *Lawrence,* 108 Miss. 291, 66 So. 745, Ann. Cas. 1917E, 322; *City of Jackson* v. *Mississippi Fire Insurance Co.,* 132 Miss. 415, 95 So. 845; *Bell's Gap R. Co.* v. *Pennsylvania,* 134 U. S. 232, 10 S. Ct. 533, 33 L. Ed. 892; 4 Cooley on Taxation (4th Ed.) 704-717. See, also, authority cited under the next subdivision hereof.

The reasonableness of such a classification is in the first instance for the determination of the legislature, and the requirement therefor does not mean that the classification must be reasonable "according to the judgment of reviewing judges, but that the court must be able to see that the legislators could regard it as reasonable and proper without doing violence to common sense." *People* v. *Mensching,* 187 N. Y. 8, 79 N. E. 884, 10 L. R. A. (N. S.) 625, 10 Ann. Cas. 101; *City of Jack-*

*son* v. *Mississippi Fire Insurance Co.,* 132 Miss. 415, 95 So. 845. The question for decision then is, Is the classification here made of income reasonable, or can it be so regarded without doing violence to common sense? The argument on which such a classification is based is:

"That there should be, as nearly as practicable, equality of sacrifice among the various taxpayers, and that a tax levied at a uniform or proportional rate can rarely, if ever, produce equality of sacrifice; that one per cent. of a small income, which just suffices to support its owner, is a far larger relative contribution to the public treasury than one per cent. of an income so large that it cannot be exhausted by its owner, except by means of lavish and extravagant expenditures." *State* v. *Frear,* 148 Wis. 456, 505, 134 N. W. 673, 688, L. R. A. 1915B, 569, at page 591 (Ann. Cas. 1913A, 114).

In *Knowlton* v. *Moore,* 178 U. S. 41, at page 109, 20 S. Ct. 747, 774, 44 L. Ed. 969, at page 996, wherein the court was dealing with a graduated inheritance tax, it was said:

"The review which we have made exhibits the fact that taxes imposed with reference to the ability of the person upon whom the burden is placed to bear the same have been levied from the foundation of the government. So, also, some authoritative thinkers, and a number of economic writers, contend that a progressive tax is more just and equal than a proportional one. In the absence of constitutional limitation, the question whether it is or is not is legislative and not judicial."

When this argument is viewed in the light of the fact that a graduated tax on income has been held by the supreme court of the United States not to violate the principle of equality in taxation, and the further fact that such a tax is expressly authorized by the Constitutions of a number of our sister states, and "has been approved for many years by many of the most enlightened governments of the world, and has the sanction of many of the most thoughtful economists," it would be difficult to say

that such a tax, and the necessary classification of income therefor, is unreasonable, to say nothing of its being impossible to .so regard it without doing violence to common sense. See, also, *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283, 18 S. Ct. 594, 42 L. .Ed. 1037; *Billings* v. *Illinois,* 188 U. S. 97, 23 S. Ct. 272, 47 L. Ed. 400; *Clark* v. *Titusville,* 184 U. S. 329, 22 S. Ct. 382, 46 L. Ed. 569; *Brushaber* v. *Union P. 'R. Co.,* 240 U. S. 1, 36 S. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713; *Tyree Realty Co.* v. *Anderson,* 240 U. S. 115, 36 S. Ct. 281, 60 L. Ed. 554; *Stebbins* v. *Riley,* 45 S. Ct. 424, 69 L. Ed. —; *Alderman* v. *Wells,* 85 S. C. 507, 67 S. E. 781, 27 L. R. A. (N. S.) 864, 21 Ann. Cas. 193; 4 Cooley on Taxation (4th Ed.) 3487; 26 R. C. L. 152.

It is true that the Magoun, Billings, Knowlton, and Stebbins cases deal with graduated inheritance taxes, and it may be, as it is said, that the inheritance of property is not a right but is a privilege which the state may confer or withhold at its pleasure, and that, in conferring the privilege, it may attach such conditions thereto as it may see fit. Nevertheless it will not do to say that they are not in point and controlling here, for the reason that it is beyond dispute, and was pointed out in the Magoun case that, when the state confers a privilege, it must "not fail to treat 'all alike under like circumstances and conditions, both in the privilege conferred and the liabilities imposed.' " The fallacy in the argument that these cases apply only to inheritance taxes and not to other excises has been at least twice exposed by the supreme court of the United States. *Clark* v. *Titusville* and *Knowlton* v. *Moore, supra.* In the Clark case the court, in dealing with objections to a graduated sales tax, among other things, said:

"These objections are but the expression of the effect of classification by amount, and have been made before and considered before by this court, and the judgment has been adverse to the contention of plaintiff in error. . . . Classification by amount came up for considera-

tion and decision in *Magoun* v. *Illinois Trust & Sav. Bank*, 170 U. S. 283, 42 L. Ed. 1037, 18 Sup. Ct. Rep. 594, and was sustained. That case, plaintiff in error recognizes, may be urged against his contention, and attempts to limit its decision to the power of a state over inheritances, and to explain by that power, not only the taxes imposed, but the discriminations which were claimed to have resulted from grading the taxes by the amount of the legacy. This, we think, is a misunderstanding of the opinion."

The court then proceeded to show the relevancy of the Magoun case and to apply the rule announced by it to the tax with which it was then dealing.

In the Brushaber case, wherein the graduated feature of the present federal income tax was attacked on the ground that it violated the fundamental principle of equality in taxation, the court, in overruling the objections, said:

"That its absolute want of foundation in reason was plainly pointed out in *Knowlton* v. *Moore*, 178 U. S. 41, 44 L. Ed. 969, 20 Sup. Ct. Rep. 747, and the right to urge it was necessarily foreclosed by the ruling in that case made."

Moreover, the graduated inheritance tax under consideration in *Knowlton* v. *Moore* was imposed, not by a state, but by the federal government, and, as the right to inherit property is conferred by a state and not by the Federal government it cannot be said that the Federal government which imposed the tax there under consideration could have conferred or withheld the right to inherit the property there taxed at its pleasure, and therefore that case is not in point and controlling here. Nor can it be said that, as the equal protection of the law clause of the Fourteenth Amendment does not apply to the Federal government, that case is not in point here, for the question which the court was there called on to decide was whether the graduated feature of the tax produced inequality in taxation—the exact question it would

have had to decide if the tax had been imposed by a state and challenged on the ground that it deprived the complainant of the equal protection of the law.

In so far as the principle of equality is concerned, there is no difference between a graduated income tax and a graduated privilege tax, and an examination of the privilege tax laws of this state for many years back discloses that the great majority of them are graduated according to an appropriate standard, and in *Insurance Agency* v. *Cole,* 87 Miss. 637, 40. So. 228, this court, in upholding a privilege tax, pointed out that it was "graduated by a standard fixed by the legislature," and said that "all of the same class are taxed alike, and this fulfills the requirement of the law."

Section 18 of the act provides that it shall apply to all corporations except—

"(1)   That the following organizations shall be exempt from taxation under this act: labor, agricultural, horticultural, mutual savings banks, fraternal orders, cemetery companies, religious, charitable or scientific associations, business leagues, chambers of commerce, boards of trade, civic leagues, social clubs, farmers fruit growers or like associations, Federal land banks and farm loan associations, when organized and operated for public purposes and when no part of the income inures to the benefit of any private stockholder or member, and national banks and state banks and domestic mutual building and loan associations organized under the laws of the state of Mississippi."

The power of the state to confer exemptions from taxation of this character is settled by a long line of decisions extending from *Mississippi Mills* v. *Cook,* 56 Miss. 63, to *City of Jackson* v. *Mississippi Fire Insurance Co.,* 132 Miss. 415, 95 So. 845. Moreover, if this exemption should be void, it may be stricken from the act without affecting the remainder thereof. *Adams* v. *Standard Oil Co.,* 97 Miss. 879, 53 So. 692; section 42 of the act.

As to section 79 of the state Constitution:

This section provides that the right of redemption from all sales of real estate for the nonpayment of taxes shall exist ''on conditions to be prescribed by law.'' Section 30 of the act provides that the property of a defaulting taxpayer may be levied on and sold by the sheriff for the payment of any tax due by him under the act, but fails to prescribe the conditions on which land may be redeemed from such a sale. This section of the Constitution is self-executing, and the failure of the legislature to prescribe the conditions on which the right of redemption shall be exercised does not invalidate the statute. *Union Savings Bank & Trust Co.* v. *City of Jackson,* 122 Miss. 557, 84 So. 388.

As to section 135 of the state Constitution:

This section creates the office of tax assessor, and the appellees' contention is that the ascertainment of the amount of a person's income for the purpose of taxing it is an assessment thereof, and can be made, under this section of the Constitution, only by the regular tax assessor. This objection to the statute was disposed of in *Enochs* v. *State,* 133 Miss. at page 143, 97 So. 537, wherein it was said:

''The implied requirement of section 135 of the state Constitution, that taxes shall be assessed by the assessor and collected by the sheriff, one of whose duties is to collect taxes (as heretofore construed by this court), has no application to privilege taxes, but only to such as can only be fixed by an assessment of, and is primarily a charge against, property''—citing *State* v. *Adler,* 68 Miss. 487, 9 So. 645; *Thibodeaux* v. *State,* 69 Miss. 683, 13 So. 352.

An income tax as hereinbefore pointed out is an excise and not a property tax.

As to the commerce clause of the Federal Constitution:

The income of the Gulf, Mobile & Northern Railroad Company is derived from both *inter-* and *intra-*state commerce, and its contention is that a tax by the state on that portion of its income derived from interstate com-

merce is a burden on such commerce within the meaning of this clause of the Federal Constitution. If the tax were on gross income a serious question would be here presented, but it is not on gross, but on net, income, and a tax on net income, derived in whole or in part from interstate commerce, is not a burden·thereon within the meaning of this clause of the Federal Constitution, as pointed out by the supreme court of the United States in *Glue Company* v. *Oak Creek,* 247 U. S. 321, 38 S. Ct. 499, 62 L. Ed. 1135, Ann. Cas. 1918E, 748; *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113, 41 S. Ct. 45, 65 L. Ed. 169; *Shaffer* v. *Carter,* 252 U. S. 36, 40 S. Ct. 221, 64 L. Ed. 445; *Atlantic Coast Line R. Co.* v. *Daughton,* 262 U. S. 413, 43 S. Ct. 620, 67 L. Ed. 1051.

As to the extraterritorial effect of the act:

The tax imposed on residents of the state and on domestic corporations is on the whole of their income, whether derived from business within or without the state, and the contention is that the tax is·void in so far as it covers income derived from business without the state. The question here presented was ruled against the appellees by the supreme court of the United States in *Maguire* v. *Trefry,* 253 U. S. 12, 40 S. Ct. 417, 64 L. Ed. 739, and *Shaffer* v. *Carter,* 252 U. S. 37, 40 S. Ct. 221, 64 L. Ed. 445.

As to the due process of law clause of the state and Federal Constitutions:

Section 30 of the act provides:

"If any tax imposed by this act or any portion of such tax be not paid within sixty days after the same becomes due, the commissioner shall issue a warrant under official seal directed to the sheriff of any county of the state commanding him to levy upon and sell the real and personal property of the person owning the same, found within his county for the payment of the amount thereof. . . . and in the same manner prescribed by law in respect to executions issued against property upon judgments or attachment proceedings, of a court of record."

The contention of the appellees is that a sale of property under this provision of the act deprives the owner thereof without due process of law. Why it should have that effect is not apparent, and the contention is without merit.

The remaining contentions of the appellees may be disposed of together. They are that section 36 and the following provisions of other sections of the act conflict with either the state or Federal Constitutions: (1) The method prescribed by section 6 for ascertaining the gain, profit, or income from a sale or disposition of property acquired on or before the passage of the act; (2) the provision of section 11 that income shall include gains or profits from the sale of property; (3) the provision of paragraph 10 of section 12 that "in the case of a nonresident this deduction shall be allowed only as to contributions or gifts made to domestic corporations, or to such vocational or rehabilitation fund;" (4) the provisions of section 15 that certain facts "may be determined by processes or formulas of general apportionment prescribed by the commissioner with the approval of the Governor."

It is not necessary for us to determine the validity *vel non* of any of these provisions of the act, for the reason that it does not appear from the record that any of them affect the income of these appellees and all of them, if invalid, may be stricken from the act without effect on the validity of the remainder thereof, both under the general rule for construing statutes, and the express provision therefor in section 42 of the act.

The court below having dismissed the action on the theory that the act is void, the judgment must be reversed.

*Reversed and remanded.*

HOLDEN, J. (concurring). The income tax law in this state was upheld and declared valid by this court in the case of *Hattiesburg Grocery Co.* v. *Robertson,* 126 Miss. 55, 88 So. 4, 25 A. L. R. 748, about five years ago. That

decision has not been overruled by any court nor annulled by the legislature; and as it positively announces the law of Mississippi, it is the duty of this court to follow it in the case now before us.

The income tax law in the instant case is the same in principle and purpose as the income tax law passed upon and held valid in the *Hattiesburg case, supra.* It is not a property tax, but is an excise income tax. This has been already decided, and is too plain for discussion.

The principal difference between the present Income Tax Act and that in the Hattiesburg case is the graduating feature, or progressive rate of tax on net incomes. This feature of the law is obnoxious to my sense of equal and just taxation, but nearly all of the courts, including the supreme court of the United States, hold that the progressive rate is valid and proper, on the ground that it taxes equally all net incomes within the same class. I cannot go contrary to a principle so well settled by the courts of our country, including our own court, with reference to excise or privilege taxes. (See the majority opinion by the Chief Justice as to cases cited.)

This court makes no laws, nor does it repeal any; the legislature has the sole power in this regard. A court has only the authority and duty to pass upon the validity of the laws made by the legislature, and construe and apply them as written, and that is true, regardless of whether such laws are wise, or unwise, or obnoxious or popular. If any law is undesirable and oppressive, the remedy is to have the legislature repeal it; the courts cannot annul the expressed will of the legislature if the law is valid under the Constitution.

ANDERSON, J. (dissenting). I dissent from the majority opinion. Four years ago I joined with Judge SYKES in a dissenting opinion in *Hattiesburg Grocery Co.* v. *Robertson,* 126 Miss. 655, 89 So. 369, in which we held that, as long as section 112 of our Constitution stood, there could be no income tax law in this state taxing in-

come derived from real and personal property. After the most thorough reconsideration of the question of which I am capable, I am still of that opinion. The majority opinion in the present case, in so far as it holds that the income tax statute under consideration does not violate section 112 of the Constitution, is founded upon the majority opinion in that case. In my judgment the foundations of the Hattiesburg Grocery Co. case are weak. One of the cases principally relied on and cited as supporting the opinion in that case is *Pollock* v. *Farmers' Loan & Trust Co.,* 157 U. S. 429, 15 S. Ct. 673, 39 L. Ed. 759. This case decided exactly the converse of what that case did. The only cases referred to in the Hattiesburg Grocery Co. case as sustaining it, which in fact do sustain the opinion, are the Missouri and Georgia cases; the reasoning in both of which in my opinion is weak and unsound.

Section 4 of the income statute under consideration provides for the taxation of the entire net income. Section 6 provides, among other things, the basis for ascertaining gain derived or loss sustained from the sale or disposition of real and personal property, which is to go to make up the income. The act is not open to construction as to what is taxed. It is all net income derived from any source whatsoever and includes profits made from the sale or other disposition of both real and personal property.

The right to acquire, own, and enjoy real and personal property is a natural right. It is one of the rights reserved to the people by section 32 of our Constitution. The legislature can neither take it away nor materially impair it. It is not a privilege granted to the citizen by the legislative branch of the government which may be taxed as such. The net income from real and personal property is the original and sole source of the existence of its value. It has no other value. Its very fundamentals consist of the rents, issues, and profits therefrom. Except for the rents, issues, and profits, it

would be dead property; it would be worthless. The income statute is a revenue measure pure and simple. It is not an occupation tax so far as real and personal property is concerned. It is not a license law imposing a privilege tax on that character of property, for there is no pretense of an exercise of police power involved. In *Thompson* v. *Kreutzer,* 112 Miss. 165, 72 So. 891, it was said that:

"A tax on a thing is a tax on all its essential attributes; and a tax on an essential attribute of a thing is a tax on the thing itself. So that a tax on a thing owned is necessarily a tax on the right of ownership thereof."

The simple question is whether a tax on the only attribute of a thing which gives it value is a tax on the thing itself. It seems that to ask that question is to answer it. Here we have a tax on the net income from real and personal property; the only attribute which gives gives value to such property. This position is sustained by the *Hylton Case,* 3 U. S. (3 Dall.) 171, 1 L. Ed. 556; *Brushaber Case,* 240 U. S. 1, 36 S. Ct. 236, 60 L. Ed. 500, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713; *Eisner* v. *Macomber,* 252 U. S. 205, 40 S. Ct. 192, 64 L. Ed. 528, 9 A. L. R. 1570; *In re Opinion of the Justices,* 220 Mass. 613, 108 N. E. 570; *Eliasberg Bros.* v. *Grimes,* 204 Ala. 492, 80 So. 56, 11 A. L. R. 300; *Thompson, Auditor,* v. *McLeod,* 112 Miss. 383, 73 So. 193, L. R. A. 1918C, 893, Ann. Cas. 1918A, 674.

I deem it hardly necessary to say that it is conceded by counsel for the state, and by the majority opinion, in effect, that, if a tax on net income derived from real and personal property is a direct tax on the property itself, such a tax violates section 112 of our Constitution.

In my judgment the Hattiesburg Grocery Co. case is not only unsound but most mischievous in its effects, and ought to be overruled. The overruling of the Hattiesburg Grocery Co. case would not leave this court without authority in this state to stand upon, for *Thompson* v. *McLeod, supra,* and that case are squarely in conflict, as

it appears to me. And furthermore, the opinion in the Hattiesburg Grocery Co. case neither criticized nor over-ruled the McLeod case. In the latter case, chapter 110 of the Laws of 1912 was under consideration, which was "an act to levy and collect and enforce the payment of an annual privilege tax or occupation fee upon all persons, associations of persons, or business firms and corporations, pursuing the business of extracting turpentine from standing trees," and fixing a tax of one-fourth of one cent per year for each cup or box used in extracting the turpentine. The court held that the tax, although called a privilege or occupation tax, was not such, but was in truth and in fact a property tax on the land of which the pine trees were a part, and violated section 112 of our Constitution requiring uniformity and equality in taxation. In discussing the question there involved, the court used in part this language:

"It is conceded by counsel for the state that, if the tax here attempted to be imposed is a property tax, the act imposing it is unconstitutional and void. In following the rule, so frequently announced by the courts, of looking through the form to the substance, it is manifest that the tax exacted by the act under review operates, and can only operate, as a property tax, and is really not a privilege tax. We are not called upon to place any limitation upon the right of the state to exact licenses or impose privilege taxes that are really such and to require the taxes as a condition precedent to the right to do business within the confines of our commonwealth. We do not question the right of the state, also, to measure a privilege tax by the volume or amount of business done. . . . Here the legislature attempts to say to the citizen:

" 'Although we recognize that you are the lawful lessee or owner of standing pine trees, which produce, when tapped, an annual product of resin, and although we have demanded and you have paid your full share of taxes upon these standing pine trees and the soil which

138 Miss.—8.

continually feeds them, nevertheless thou shalt not lay ax to the tree to extract the natural gum without subjecting any property which you have in the state of Mississippi to an additional tax of one-fourth of a cent for each box you cut.'

''This act strikes down the inherent right of the property owner to lay hand upon his own property. Every owner of a pine tree enjoys the same natural right to extract gum from the tree as the owner of a vineyard has to pluck his own grapes. It would be the same thing to require a privilege tax as a precedent right of the owner to pull the ripe pecans from his pecan orchard or to enjoy a drink of pure water from the cool spring of the old homestead. . . . If the tax here questioned can lawfully be imposed, then the legislature of our state, in a desperate search for revenue, can effectually brush aside the essential feature of equality and uniformity demanded by the Constitution. The provision that property shall be taxed in proportion to its value would be nullified, and the integrity of the Constitution itself destroyed.''

What is the difference in principle in taxing the turpentine extracted from pine trees and the income derived from real and personal property? If there is any, it is beyond my capacity to see it. They are both income. For illustration, a tax is sought to be levied by the state on the turpentine extracted by a person from the trees on his land, or on the means used in extracting the turpentine—it does not make any difference which. The court holds that to be a direct tax on the land itself and therefore violative of section 112 of our Constitution. On the other hand, the state seeks to tax the income from cotton and corn and other agricultural products of the landowner. The court holds that to be an excise tax and not a property tax on the land. There is no sort of refinement by which the Hattiesburg Grocery Co. and the McLeod cases can be reconciled. Either the Hattiesburg

Grocery Co. case or the McLeod case is right. Both cannot be right.

If the statute, so far as it levies a tax upon the net income from real and personal property, were held unconstitutional, the whole act would have to go down, for that part of it is not separable from the balance. The scheme left would be a monstrosity. No legislature would have enacted it.

However, as it appears to me there is a radical difference between the income tax statute upheld in the Hattiesburg Grocery Co. case and the one under consideration here, and that is to be found in section 5 of the latter, which provides, in substance, so far as land and personal property are concerned, that the tax on the income therefrom shall be a charge or lien against the property from which it is derived. The statute simply means that it shall be a tax on the real and personal property; the amount of the tax to be measured by the net income therefrom. In other words, instead of basing the tax on the assessed value of the real and personal property, it is based on the net income therefrom, but it is made just as much a charge against the property itself as if it had been based on the assessed value thereof. As I view it, this provision in the statute is simply a bald statement in effect that the tax is a direct tax on the real and personal property itself.

Good-bye section 112, this is the last of you. The framers of our Constitution by your adoption thought they were affording the taxpayers of the state some security against unjust and unequal taxation. They were mistaken. Little by little you have been whittled away by the courts until there was little left. By this stroke that small remaining vestige has been swept away. Now by giving each scheme of taxation a new name, property may be taxed times without number. It is all in the name. The state now, without let or hindrance from the Constitution may fill its insatiate tax maw to overflowing.

McGowen, J., concurs in this dissent.